H. HAUSNER & CO. *et al.* V. F. E. LEEBRICK *et al.*

CHATTEL MORTGAGE — *Possession by Mortgagee — Lien — Priority Over Attachment.* Where a creditor, having accepted from his debtor in good faith, to secure an existing indebtedness to him, a chattel mortgage upon a stock of goods; and under the mortgage, which is not recorded, obtains the key of the store containing the stock of goods, and takes actual possession of all of such goods, and while in such possession invoicing the stock is found by the sheriff with writs of attachments in his hands to levy; and thereupon such mortgagee at once informs the sheriff of his possession of the stock of goods under the mortgage, and the sheriff demands of him the possession of the same, and takes from him the key of the store and then makes a levy on the stock: *Held,* That the chattel mortgage, with the actual possession of the property obtained thereunder by the mortgagee, is a prior lien to the levies of the sheriff of the attachments of creditors.

*Error from Osborne District Court.*

THIS was an action brought by *H. Hausner & Co.* and *A. McKeever* against *F. E. Leebrick.* Hausner & Co. and Mc-Keever were creditors of Leebrick, doing business at Atchison. Leebrick did business at Alton, in Osborne county. The plaintiffs sold goods and merchandise to F. E. Leebrick in the amounts respectively as follows: The amount of the claim of H. Hausner & Co. against Leebrick was $150.10, together with interest thereon at the rate of 6 per cent. per annum from the 18th day of April, 1889; and the amount of the claim of Andrew McKeever against Leebrick was a balance of $474.57, with interest thereon at the rate of 6 per cent. per annum from the 26th day of April, 1889. The petitions in both cases were filed on the 7th day of May, 1889, and on the same day separate affidavits in attachment were filed by Hausner & Co. and McKeever in their respective actions against F. E. Leebrick. The property in controversy was attached by the sheriff. On the 27th day of May, 1889, motions in both cases were filed by the defendant, Leebrick, to make one Walter Korb a party defendant, which motions were sustained

by the court. On the 17th day of June, 1889, Korb filed his interplea in each of the cases, in which he alleged he was the special owner of the goods and chattels taken on the orders of attachments issued in the cases; that on the 19th day of April, 1889, Leebrick was indebted to him in the sum of $1,641, with interest at the rate of 10 per cent. per annum from the 21st day of November, 1888, and that on the 19th day of April, 1889, Leebrick, to secure such indebtedness, executed to him a chattel mortgage, conveying to him all the personal property taken on the orders of attachment; and also alleging he had possession of the goods on the 7th day of May, 1889, the date of the levies. Afterward plaintiffs filed their answers to the interplea of Korb. By agreement of the parties and the order of the court, the cases of Mc-Keever and Hausner & Co. against Leebrick, were consolidated, and tried as one cause before the court, a jury being waived. The court made special findings of fact and conclusions of law. Upon the findings of fact and conclusions of law, judgment was rendered in favor of Korb for the possession of the goods and chattels in dispute, or, in default of the recovery of the same, for $1,139.65, the full value thereof, and for $32.30, his damages for the detention of the same. *Hausner & Co.* and *McKeever* excepted, and bring the case here.

*Solomon & Bland,* for plaintiffs in error:

The testimony of Korb, who was the principal witness, fails to disclose any such immediate delivery and taking actual possession and control of the goods as the authorities show to be requisite under the statute. Korb says that "he (Leebrick) told me to take possession of it and run it and get the amount of money out of it if I could." He is asked: "Did he deliver you the goods?" and he answers, "Yes, sir." This is but his opinion concerning the matter, a legal conclusion, and is of no weight whatever, and does not even tend to show a delivery of the goods. Gen. Stat. of 1889, ¶ 3903; *Crandall v. Brown,* 18 Hun, 461. See, also, *Porter v. Parmley,* 52 N. Y.

185; *Wilson v. Hill,* 17 Nev. 401; *Topping v. Lynch,* 2 Robt. (N. Y.) 484; *Camp v. Camp,* 2 Hill, 628; *Randall v. Parker,* 3 Sandf. 73; *Swiggett v. Dodson,* 38 Kas. 702; *Manu- |facturers' Bank v. Rugee,* 59 Wis. 221; *Menzies v. Dodd,* 19 id. 343; *Steele v. Benham,* 84 N. Y. 634; *Hanford v. Archer,* 4 Hill, 271; *Brunswick v. McClay,* 7 Neb. 137; *Mc- Carthy v. Grace,* 23 Minn. 182; *Flagg v. Pierce,* 58 N. H. 348; *Doyle v. Stevens,* 4 Mich. 87; *Anderson v. Brenneman,* 44 id. 198; *McMahill v. Humes,* 21 Ill. App. 513; *Eagle v. Rohrheimer,* 21 id. 518; *Atchison v. Graham,* 14 Colo. 217.

And there is not a single fact given in evidence by Korb showing possession taken at this time. He does not even show that he inspected the goods, or did a single act to indicate ownership or control. "Possession cannot be taken by words and inspection," and he did not inspect. All it amounted to was words, and not even that, for he does not say that he told Leebrick that he took possession. He says that the next morning he "went down and went into the store." But there is nothing in that statement to indicate that he was in possession, or even pretending to be. It appears very clearly that there was not such an immediate delivery and taking possession as are required by the statute.

The fact that there was no change of possession being es- tablished, fraud is an inference of law. *Flagg v. Pierce,* 58 N. H. 348. See, also, *McDonald v. Gaunt,* 30 Kas. 693; *Gollober v. Martin,* 33 id. 252; *Phillips v. Reitz,* 16 id. 396; *Kurtz v. Miller,* 26 id. 314.

*Hays & Woods,* for defendant in error Korb:

The only points upon which the plaintiffs in error ask this court to reverse the judgment in this case are, that the findings of fact made by the court as to Korb's possession of the prop- erty are not sustained by the evidence, and that the evidence shows that the mortgage of Korb was fraudulent and void. We submit, on this proposition, that no motion in the lower court was ever made to set aside any of the findings of fact made by the court, and that such questions are not properly

before this court. The findings of fact made by the court upon parol evidence are conclusive upon this court if there is any evidence to sustain such findings. *Tootle v. Coldwell*, 30 Kas. 125.

Counsel for plaintiffs in error say that Korb is a cousin of Leebrick and also a brother-in-law, and that their close relationship is a badge of fraud, neither of which statements is true, and the evidence does not show them to be true. Korb was a cousin of Leebrick's wife, and this was all the relationship shown between the parties. Korb lived at Stockton, and Leebrick was doing business in Alton.

Another badge of fraud which the plaintiffs in error claim is, that Leebrick mortgaged to Korb all of his property and immediately left the country. The supreme court of this state has so often decided that a debtor, even in failing circumstances, may prefer creditors if the same is done in good faith, and this not only in the form of actual payment of money to the particular creditor preferred, but also in the form of a sale or appropriation of property or the giving of chattel mortgage to such creditor, that we do not feel that it is incumbent upon us to make any extended argument in reply to this proposition, but for a discussion of this subject we will call the attention of the court to the cases of *Tootle v. Coldwell*, 30 Kas. 125; *Avery v. Eastes*, 18 id. 505; *Campbell v. Warner*, 22 id. 604; *Arn v. Hoerseman*, 26 id. 413; *Randall v. Shaw*, 28 id. 422; *Bishop v. Jones*, 28 id. 680; *Harris v. Capell*, 28 id. 117; *Kelsey v. Harrison*, 29 id. 145; *McDonald v. Gaunt*, 30 id. 695; *Bailey v. Manufacturing Co.*, 32 id. 80; *Kennedy v. Powell*, 34 id. 25; *McPike v. Atwell*, 34 id. 150.

It has been decided in this state, under the chattel-mortgage law, that although a mortgage be not recorded, if the possession be delivered to the mortgagee at any time after the execution of the mortgage and before the levy of an attachment or execution, that such mortgage, as to all the property delivered, is valid and binding. See *Cameron v. Marvin*, 26 Kas. 612; *Savings Bank v. Sargent*, 20 id. 576; *Frankhouser v. Ellett*, 22 id. 127; *Dayton v. Savings Bank*, 23 id. 421; *Too-*

*tle v. Lyster,* 26 id. 597; *McVay v. English,* 30 id. 371; *Dolan v. Van Demark,* 35 id. 308.

The opinion of the court was delivered by

HORTON, C. J.: The trial court specially found, among other things, that on the 21st of November, 1888, F. E. Leebrick was indebted to Walter Korb in the sum of $1,641; that on that date he gave him his promissory note due in six months, bearing interest from date at the rate of 10 per cent. per annum; that on the 19th of April, 1889, Leebrick executed and delivered to Korb a chattel mortgage upon the stock of goods and merchandise in dispute; that on the same day, about half an hour after the delivery of the mortgage, Leebrick delivered the possession of his stock of goods to Korb, telling him he could take possession thereof and sell sufficient to pay his indebtedness; that Leebrick left the county very soon afterward for Washington territory; that the next morning Korb in person went to the store and remained in personal charge of the same for three or four days, when he went to his home, in Stockton, Rooks county, leaving Mrs. Leebrick, the wife of F. E. Leebrick, in charge, under an arrangement with her that she should sell the goods and account to him for the proceeds thereof; that during the time that Korb and Mrs. Leebrick had charge of the store, including what he sold and what she accounted to him for, he received $73 as the proceeds of the sales; that Korb, after he returned from Stockton, on May 7, 1889, took personal control of the store; that on the same day the sheriff appeared and levied upon the stock; that at the time the sheriff made the levy he found Korb in control of the store, and was informed by him that he had a mortgage on the stock, and was in possession under his mortgage. This court has decided very often that

"A debtor, even in failing circumstances, may prefer creditors, if the same is done in good faith, and this not only in the form of actual payment of money to the particular creditors preferred, but also in the form of the sale or appropria-

tion of property, or the giving of chattel mortgages to such property." (*Tootle v. Coldwell*, 30 Kas. 125; *Avery v. Eastes*, 18 id. 505; *Campbell v. Warner*, 22 id. 604.)

This court has also ruled, that

"In all cases where there is a voluntary delivery of the possession of the property by the mortgagor to the mortgagee, under the mortgage, such delivery will render the mortgage valid as to all persons not then having any specific right or lien upon the property, provided the mortgage was previously valid as between the parties thereto." (*Cameron v. Marvin*, 26 Kas. 612; *Savings Bank v. Sargent*, 20 id. 576; *Frankhouser v. Ellett*, 22 id. 127; *Dayton v. Savings Bank*, 23 id. 421.)

It is admitted that the chattel mortgage was never deposited with the register of deeds, and the contention of the plaintiffs is, that there was no actual or continued change of the goods mortgaged after the delivery of the chattel mortgage, and that the findings of the trial court are not sustained by the evidence. We think otherwise. It appears from the following testimony that the material facts found are fully supported. Korb testified, among other things, as follows:

"Ques. Where were you when you took this mortgage of Mr. Leebrick? Ans. I was in Leebrick's store, in Alton."

"Q. What transpired there after you took the mortgage, in reference to the possession of the goods described in this mortgage? A. Mr. Leebrick had to go to Washington territory, and I told him that he had better turn the goods over to me to secure me, and he did."

"Q. How soon after this mortgage was made did he turn the goods over to you? A. Probably half an hour.

"Q. Had there been any sales of goods in the meantime? A. No, sir.

"Q. What time of the night or day was this? A. Along in the evening, after dark; I do n't know just what time, but about dark.

"Q. How long did you remain there in possession of the goods? A. I think I stayed there myself about three days, or something like that, and then I went back home.

"Q. Where did you live at that time? A. At Stockton.

"Q. Who did you leave the goods in charge of when you went away? A. Mrs. Leebrick.

"Q. In what capacity? A. She agreed to take care of them for me and turn over the proceeds of the sales to me.

"Q. When did you come back from Stockton? A. Oh, I think I was away probably four or five days; I do n't remember exactly; I think about that time.

"Q. How much sales had you made up to the time the attachments were levied? A. The sales amounted to, I think, $73.

"Q. Did he [Leebrick] deliver you the goods? A Yes, sir.

"Q. Where did he live at that time? A. In Alton.

"Q. In that same building? A. No, sir.

"Q. Where were these goods? A. In what they call the 'Lloyd building' in Alton.

"Q. What did you do the next morning after this? A. I went down and went into the store.

"Q. What was the arrangement with Mr. Leebrick about how you were to sell these goods? A. I was to sell them the best I could.

"Q. For what purpose? A. To pay his debt.

"Q. Were you in the store when the sheriff came to attach in this case. A. Yes, sir.

"Q. What were you doing in the store and who was there? A. Cash Walker, of Alton, was in there, and we were invoicing the goods at that time.

"Q. Cash Walker and you were invoicing the goods? A. Yes, sir.

"Q. Anyone else? A. No. sir.

"Q. What conversation occurred between you and the sheriff before this attachment was levied? A. I told the sheriff that I had possession of the goods, and they were mine at that time.

"Q. Did you tell him what claim you had them on? A. Yes, sir; I told him I had a mortgage on them to secure an amount of money that Mr. Leebrick owed me.

"Q. Did the sheriff at the time he took possession of the goods take all the goods and fixtures away? A. Yes, sir, he demanded possession and took the key from me.

"Q. And took everything? A. Yes, sir.

"Q. Did he return any portion of them to you? A. No, sir."

W. A. Ware, the sheriff, testified:

"Q. You are sheriff of this county? A. Yes, sir.

"Q. You served the attachments in this case? A. Yes, sir.

"Q. In both of these cases? A. Yes, sir.

"Q. Who did you find in possession of the stock of goods when you went to serve the attachments? A. Walter Korb.

"Q. The interpleader here? A. Yes, sir.

"Q. Who else was in the store? A. C. M. Walker, I believe.

"Q. What were they doing there? A. They were taking an invoice of the goods.

"Q. What conversation did you have with Mr. Korb with reference to his right and claim on those goods, before you attached them? A. I told him that I had attachment writs to levy on the goods, and he said the goods were his and in his possession.

"Q. What did he say about the claim he had upon them? A. I think he told me he had a chattel mortgage upon them.

"Q. Did he tell you the amount of the claim? A. I do n't remember as to that; it is likely he did, but I do n't remember what the amount was."

As the chattel mortgage was valid between the parties at the time of its execution, and as Korb took actual possession of all the mortgaged property before the sheriff levied thereon, and as the sheriff, representing the attaching creditors, had notice of such possession and the mortgage under which it was taken, the judgment of the trial court must be affirmed.

All the Justices concurring.