Bissell, J.,
delivered the opinion of the court.
The Strater-Thorp Drug Company carried on a wholesale drug and supply business and had several stores in different localities. One was located at Durango, and this suit is about a portion of the stock contained in that store. The court is considerably embarrassed in making a statement of facts, because it may appear to be a departure from the usual rule to accept the verdict of a jury as conclusive on all disputed questions. No such purpose is entertained nor so far as we can see shall we depart from it. The trouble proceeds from the circumstance that the jury were instructed on several hypotheses, and the general verdict which was rendered did not of necessity specifically settle some questions either one way or the other. The only matters about which there could be any sort of question relate to the time of the delivery of the mortgage, and to the circumstances of the transaction which the defendants claim to have been fraudulent. It is wholty unnecessary to state the contents of the record bearing on the question of the fraudulent character of the mortgage under which the plaintiffs claim. There is not a particle of testimony which would justify the jury in finding any fraud in the acts of the parties, and there is nothing from which the inference can be legitimately or legally drawn. There is no intention to conclude the question on the subsequent trial, if the parties conceive they are able to produce testimony tending to support this issue. It appears the Drug Company were largely indebted to the Colorado State Bank of Durango. The indebtedness was evidenced by several promissory notes. The Drug Company was the maker of some and the guarantor of others. When the bank became doubtful of the solvency of the company and *440 insisted on a settlement, the notes were transferred to the appellants, Chapman and Kirkpatrick, to make a settlement with the company on certain agreed lines.
The appellants had no interest whatever in the notes otherwise than as representatives of the bank in which they were stockholders, and they held the naked legal title for the purpose of obtaining security and enforcing the payment of the loans. How long the negotiations had been carried on is uncertain. In a measure they culminated on Saturday, the 8th of July, 1893, when it was stipulated that the Drug Company should give chattel mortgages on the stock of goods in the three stores at Durango, Rico, and Silverton. In execution of the agreement the chattel mortgages were prepared and signed on Saturday evening, some time between seven ■and half past ten o’clock. While the parties had substantially agreed on the terms of the instruments, they were to be . submitted to a lawyer whose approval or acceptance seems to .have been necessary to the conclusion of the arrangement. The mortgages were signed in the bank, taken out by the mortgagors and delivered to a notary, who took the acknowl- . edgment and carried them to his office to affix his seal. On . the following day the mortgages were turned over to the attorney, Mr. Carpenter, who passed on their legal sufficiency . and approved them in form and terms. The record is not spe- . cific as to the exact time of the delivery of all the mortgáges.- . We are not concerned, however, with any but the one which • was on the stock in the Durango store. Concerning the delivery of this security there is neither doubt nor question. It was delivered to Kirkpatrick on Monday within a very few minutes of the time it was filed for record, which was one o’clock and fifteen minutes of the day. Of this matter there is no question and about it there can be no dispute. Nobody testified it was delivered before that time, nobody gave evi- . dence about its delivery except Kirkpatrick, who testified he ■ got it within a few minutes of the time it was filed for record. The mortgagees took possession of the store and the stock when this mortgage was first given to them. The whole dif *441 ficulty proceeds from the circumstance that the mortgages were all signed on Saturday evening and turned over to the notary at that time to take the acknowledgment evidently by one of the persons interested in the Drug Company. It is argued on inference that the mortgages themselves were delivered on that evening, and consequently the mortgagees were without right because they failed to take possession of • the stock until the ensuing Monday at noon. This will be discussed later on. At the time the parties were negotiating for the settlement a representative of McPhee & McGinnity was in Durango to collect a part of the debt which the company owed that firm. It was then agreed between these par-ties that the Drug Company should turn over to the agent about $1,000 worth of goods to be applied on the debt, and the balance of the claim, which was between thirteen and fourteen hundred dollars, should be carried a while longer. In pursuance of this arrangement on Sunday and Monday morning the goods were picked out and laid aside and turned over ■to McPhee & McGinnity’s agent. When he went back after dinner he discovered the store was in possession of the mortgagees, and subsequently, and about the 20th of July, the firm commenced suit and took the goods which the appellants replevined in the present action.
The chief difficulty found in the case springs from the circumstance that the court instructed the jury respecting divers matters which were not involved in the litigation. The court gave some twenty-five or thirty instructions and some of them must have misled the jury. Quite a number were inapplicable to the facts as proven, and there was nothing in the evidence which justified any statement of the law embraced in them. The volume and number precludes a specific review of what the court gave and what it refused, and we content ourselves with a general statement of the difficulties. The jury were told that the case was controlled by the statlte of frauds and perjuries and the general legislation on that ubject. In fact this had nothing whatever to do with it. There was no question of sale and delivery of possession, *442 which are the important considerations under that act. The plaintiffs alleged and the defendant admitted possession of the goods under a chattel mortgage executed by the Drug Company prior to the time they took them. This allegation was sustained by the proof as well as established by the admission. The Drug Company did not undertake to sell their goods nor their stock to Chapman and Kirkpatrick in satisfaction of the notes, but did execute a statutory security for-the purpose of protecting the debt. The instrument provided, as might lawfully be done under our statute, that the mortgagor should keep possession according to the usual form of such instruments in this state. Most of these mortgages, which reserve to the mortgagor the right to keep possession, also permit him to use and enjoy the mortgaged property until default or until the mortgagee exercises his right to take possession of the chattels. The instrument which the Drug Company executed was changed in this respect, and the words “ use and enjoy ” were erased. The mortgagor therefore had the naked right of possession until such a time as the mortgagees might under the provisions of the instrument take the chattels into their custody. This indicates the difficulty. The appellants had a perfectly valid statutory security under which they had a right to assume possession on a breach and at the time they did, and there was no question respecting the immediate delivery of the property, which is an important consideration in the case of a sale of chattels and a conflict between the vendee and the creditor. The jury were quite elaborately instructed respecting the force and effect and the interpretation of the word-“immediate” in the statute of frauds, and as to the purpose of the parties in the deliveiy of the instrument. The jury were told “if they believed from the evidence it was understood by the parties or their agents to have been sufficiently delivered to have become irrevocable on the evening of Saturday,” then the failure to deliver the goods at the time would of necessity render the transaction fraudulent and void. Just what the jury may have concluded under this instruction cannot be determined. *443 The instruction was objectionable, not only because it was given on a matter not involved, but also because the jury were left to determine what the law was on the subject, and were at liberty to find according, to their own notions whether the transaction on Saturday evening amounted to a sufficient delivery of the instrument as between the parties. This of itself was error, and had any instruction whatever on the subject been warranted the court was bound to tell the jury what facts if found would in law constitute an irrevocable and binding delivery of the instrument. The analysis need not be further pursued, because there was nothing in the ease to warrant any instruction on this subject. There was some question made on the trial respecting the erasure of the words “ use and enjoy.” We can see no substantial difficulty in the premises. The plaintiffs.were possibly bound to explain the erasure, and the jury would be judges of the question of fact as to the existence or nonexistence of these words in the mortgage when it was delivered to the mortgagees. If'the jury found as a matter of fact the words were erased before the delivery, the instrument would then stand as a valid security.
The defendants made a vigorous effort to bring the case within the scope of the decisions in this state which hold a mortgage on a stock of goods, reserving the power of disposition to the mortgagor, to be invalid. There is no question concerning this law. An invalid mortgage of this description cannot be made good, even by the seizure of the goods prior to the levy of a writ at the instance of a creditor. In other words, it is the law of this jurisdiction that such a mortgage is invalid and cannot be aided by the acquisition of possession prior to the creditor’s attempt to levy his process on the goods. The present case is not brought within the limits of that doctrine. The jury were told the mortgage was valid in law, and if that were true, the time when possession was taken under the proof was an entirely unimportant consideration. We quite agree with the court. . The only trouble is the jury rendered a verdict for the defendants; and it might *444 possibly include the negative of the proposition that the words “use and enjoy” were erased before delivery. We do not feel at liberty to so assume, because there is no-evidence in the record to warrant it. We are met then with this very simple condition. The Drug Company executed a chattel mortgage on their stock to secure the debts which they owed certain creditors. The instrument did not violate any of the statutory requirements, and the mortgagor might keep the property until by reason of some breach, or the exercise of a right given by the instrument, the mortgagees took the chattels. If the mortgage was otherwise legal the possession which was taken on Monday noon would cure any minor defects and made the rights and equities of the mortgagees superior to anything which was acquired by the subsequent levy of McPhee & McGinnity, who were general creditors. Jones on Chattel Mortgages, see. 178; Cobbey on Chattel Mortgages, vol. 1, sec. 498.
There is nothing in the present record which necessitates the application of this well recognized doctrine. The validity of the mortgage was not at all affected by the delivery of some of the goods to McPhee & McGinnity in part satisfaction of their claim. There are two answers to the objection, either one of which entirely disposes of any difficulty in the matter. Since the mortgage was not delivered until Monday noon, the mortgagor had a perfect right in the meantime to dispose of any property in the store, either in payment of debts or by way of securing any outstanding obligations. The present suit does not raise any such question. Chapman and Kirkpatrick are not attempting to recover from McPhee & McGinnity the goods which were delivered to them by the Drug Company in part satisfaction of their debt, neither are they contending the mortgage to' have been an executed seeurity-at the time the goods were turned over. The defendants tendered an issue based on the alleged fraudulent character of the transaction, and alleged an attempt on the part of the Drug- Company, participated in by Chapman and Kirkpatrick, to hinder, delay and defraud their creditors. *445 The'court recognized the issue, conceded there was evidence tending to support it, and quite elaborately instructed the jury respecting this matter. The instructions were not warranted by the evidence. No testimony was offered which even remotely tended to show any fraudulent purpose on the part either of the Drug Company or the mortgagees, Chapman and Kirkpatrick. It was a simple transaction of a mortgage to secure an existing debt. The proof in no manner tended to establish a fraudulent intent on the part of either, except in so far as it might possibly be inferred that such an intent did exist because the parties agreed on the one side to give, and on the- other to take a mortgage to secure an outstanding indebtedness. This in no wise brings the case at all within the purview of those decisions which the court evidently followed in instructing the jury:’. Unless there should be some very great change in the evidence on the succeeding trial, these matters should be left wholly out of consideration.
The court erred in its instructions to the jury, and because of the errors which it committed in this direction, the case must be reversed and remanded.

Reversed.