HENRY E. PATRICK AND GEORGE E. PATRICK v. DONNA M. RIGGS, GARNISHEE DEFENDANT.

*Fraudulent conveyances—Mortgage in excess of debt.*

1. The taking of a mortgage for an amount in excess of the debt or the assumed liability is a badge of fraud, and is a fraud in law if the purpose is to protect the debtor's interest in the property mortgaged from other creditors.

2. A careful examination of the evidence, which is returned in the record, is held to lead to the conclusion that the court below was warranted in finding that the mortgages given to the garnishee defendant were given for amounts largely in excess of the amount actually advanced, and with intent to hinder, delay, and defraud the creditors of the mortgagor, and that they were purposely kept from the files with intent to defraud, and that they are fraudulent and void as against the plaintiffs.

Error to Houghton.    (Haire, J., presiding.)    Argued April 30, 1895.    Decided June 4, 1895.

Garnishment proceedings.    Defendant brings error. Affirmed.    The facts are stated in the opinion.

*W. F. Riggs* (*C. W. Nichols*, of counsel), for appellant.

*Hubbell & Gray* (*Charles R. Brown & Son*, of counsel), for plaintiffs.

LONG, J.    July 1, 1893, Patrick & Co. brought suit against Ekman, the principal defendant, to recover for goods sold by them to him, and for goods sold by Greenfelder & Sons and by Burnham, Stoepel & Co. to him, both of which claims had been assigned to them, and recovered judgment November 9, 1893, for ·$2,157.40, including costs of suit.    July 1, 1893, a writ of garnishment

was issued against Donna M. Riggs, who was then in possession of the goods. On July 17, 1893, she filed her disclosure, denying any indebtedness to Ekman, and claiming the right to the possession of the goods by virtue of two chattel mortgages given by Ekman,—one dated May 22, 1893, to secure payment of Ekman's note of that date for $2,900, due on or before May 25, 1893, and the other dated June 26, 1893, to secure the payment of the same note, and a note dated June 26, 1893, for $204, due June 30, 1893. The first mortgage covered all the goods, accounts, and bills receivable of the mortgagor. It appears that July 26, 1893, Reid, Murdoch & Co., having instituted proceedings against Ekman, applied for a receiver. A receiver was appointed, and an injunction was issued restraining Mrs. Riggs from disposing of the goods. In the present case a statutory issue was framed, and the whole case hinges upon the question whether Mrs. Riggs, the garnishee defendant, holds the mortgages in good faith, and for a valuable consideration. The case was heard before the court without a jury, and findings of fact and law made.

Some time prior to January 1, 1893, defendant Ekman and William F. Riggs, the husband of the garnishee defendant, and her agent and attorney in this suit, agreed to become partners. They entered into such agreement, and so continued from February 1 to February 19, 1893. The court below, after reciting the rendition of the judgment in favor of the plaintiffs and against Ekman, and the bringing of the garnishment proceedings, finds, substantially, that on January 2, 1893, William F. Riggs prepared, and mailed to different commercial agencies, including Bradstreet, and to different wholesale houses with whom they proposed to trade, certain letters, as follows:

"On the 1st of February, 1893, the firm of Ekman & Co., composed of John Ekman and William F. Riggs, will be in trade in Red Jacket, Michigan, in the grocery business, boots and shoes. We have bought out Mr. O. Olson,

already in the boot and shoe trade, and have rented his store for a term of years.   Best location in the city.   We start in trade with a cash capital of $3,000, and other capital of $1,500, and have no back debts.   Besides the store, we will have income from legal work," etc.

The court finds that the manifest purpose of this circular was to give the impression to the public that Ekman & Riggs had a capital of $4,500, and no debts.   The store was opened for business February 17, and on the 18th Riggs withdrew from the firm, and on that day Ekman's ledger shows that the firm was indebted for merchandise $1,634.56, not including any indebtedness to William F. Riggs or his wife.   On February 22, 1893, Ekman wrote the plaintiffs that he had bought out Riggs.   On the 25th of the same month he also reported to plaintiffs his financial standing, as follows:

| | |
|---|---:|
| Value of stock | $3,600 |
| Good notes and accounts | 350 |
| Other personal property | 250 |
| Total | $4,200 |
| Liabilities for merchandise | $900 |
| To W. F. Riggs | 1,200 |
| | $2,100 |
| Net assets | $2,100 |

On March 24, Ekman wrote Burnham, Stoepel & Co.:

| | |
|---|---:|
| I have goods in stock | $4,500 |
| Team and store fixtures | 500 |
| Good bills and accounts | 1,000 |
| Cash in bank to-day | 150 |
| I owe on stock less than | 1,200 |

On April 22, Ekman wrote Greenfelder & Sons:

"I carry a stock of from $5,500 to $6,000, and my fixtures and resources about $1,000.   I owe $1,200, borrowed right here at home."

On April 25, William F. Riggs sent, at request of the Wilber Mercantile Company, a report of Ekman, as follows:

"The average value of Ekman's stock is from $5,000 to $5,500. Owing on stock, about $900; amount of borrowed money, $1,200. No mortgage, suits, or judgments against him."

On April 29, Ekman made a written statement to Reid, Murdoch & Co., as to his liabilities, as follows:

| | |
|---|---:|
| Hart Bros. | $ 530 |
| Patrick & Co. | 860 |
| Roberts Bros. | 90 |
| Lachman & Kreuger | 137 |
| W. F. Riggs | 1,200 |
| Net assets | $4,143 |

This was on a blank furnished him, in which he was asked:

"Do you owe any confidential and other debts, not included in above?
"*A.* No.
"Does the above statement show all your resources and liabilities, of every kind and nature?
"*A.* Yes."

On June 9 William F. Riggs made a report to the Breckenridge Mercantile Agency, at Milwaukee, on a prepared blank, in which he says of Ekman's business: "Average value of stock, $6,000; owing on same, 2 to 3 thousand dollars." In the blank there was this question: "Any chattel mortgages or judgments?" This was not answered.

The first mortgage held by Mrs. Riggs is dated May 22, 1893, but it was not filed until June 26, 1893. Mrs. Riggs testified that she gave the mortgage to her husband shortly after it was executed, and did not know but that it was filed, while Mr. Riggs testified that he gave the mortgage to her, and that he had no conversation about filing it, and he guessed it had passed out of her mind; he knew it had out of his. On July 2, 1893, Ekman wrote Reid, Murdoch & Co. that he was forced to give the mortgage of May 22, of $2,900, as well as the later mortgage, but that he never received that amount of money.

Upon the whole record, the court below found that the two mortgages were fraudulent and void as against the plaintiffs; that they were given for amounts largely in excess of the amount actually advanced, and with intent to hinder, delay, and defraud the creditors of Ekman; and that the mortgages were purposely kept from the files, with the intent to defraud. Upon those findings, judgment was entered in favor of plaintiffs. Exceptions were taken to the findings. Amended findings were also asked and refused, to which exception is taken.

The contention is that the proofs do not support many of the findings of fact. The evidence is returned in the record. We have carefully examined it, and conclude that the court below was warranted in the findings made, and in refusing to find as requested. It appears that from the outset the formation of the partnership was but one of the means employed to give a fictitious credit. Neither party had much capital, and, if it is true that they had no back debts, they soon managed to create a debt to William F. Riggs, who, within a few days after the business started, retired from the concern. It is impossible to believe, from the testimony set out in the record, that matters could run along during those months, in the way they were carried on, without the knowledge of Mrs. Riggs. It is apparent that the moneys, if any were furnished, were the moneys of William F. Riggs, and the mortgages were taken in the name of his wife as a cover to carry out the scheme to entrap the creditors of Ekman. In an affidavit made by Ekman, in the Reid, Murdoch & Co. case, to dissolve the injunction, he states that the money to start with was obtained from William F. Riggs, and that he gave his note to Mrs. Riggs for it. It is a singular fact that, during several months immediately following the opening of the store, Ekman and Riggs both reported that the only indebtedness was this $1,200 to Riggs, and that the goods on hand amounted to from $5,000 to $6,000. It is also a singular circumstance that as late as June 9, 1893, when Breckenridge & Sons' Mer-

cantile Agency asked a report from Mr. Riggs, he, in making the report, failed to mention the mortgage of $2,900 held by his wife. No satisfactory explanation is made by Mr. Riggs or his wife about their deals, just how the mortgages came to be made, where the moneys came from which they represent, or why it was that they were not filed. The whole conduct of the business was such that those who were giving credit would be misled, and it is difficult to believe that this was not done intentionally, and with a deliberate design to defraud these creditors. While it is possible that Mrs. Riggs was not consulted about the means of carrying out the fraud, it is evident that her name was used to aid it, by giving the mortgages directly to her, instead of their being given to her husband.

It is apparent that the mortgages were greatly in excess of the actual amount advanced, and this fact, combined with others, shows clearly that the garnishee defendant cannot claim under them. Parties who take such security must act in good faith, and so as not unnecessarily to hinder, delay, or deceive other creditors. The taking of a mortgage for an amount in excess of the debt or of the assumed liability is a badge of fraud, and it is a fraud in law if the purpose is to protect the debtor's interest from other creditors. *King v. Hubbell*, 42 Mich. 597. In *Showman v. Lee*, 86 Mich. 556, 560, it was said:

"To say that a party who assumes a liability may take a mortgage in excess of the amount necessary for his security, for the purpose of hiding the debtor's interest from other creditors, and, when the fraud is exposed, may have the benefit of the mortgage to protect himself, would open the door to gross abuses."

We have not deemed it necessary to state in full the claims and exceptions made by counsel to the findings, for the reason that we are satisfied from the whole record

that the evidence supports the findings made, and warranted the entry of judgment in favor of plaintiffs.

Judgment must be affirmed.

The other Justices concurred.