[Civil No. 602.   Filed February 23, 1898.]

[52 Pac. 473.]

FARMERS AND MERCHANTS BANK, a Corporation, Plaintiff and Appellant, v. L. H. ORME, Defendant and Appellee.

1. ATTACHMENT—MORTGAGEE IN POSSESSION—LEVY, HOW MADE—LAWS 1889, ACT NO. 20, SEC. 9, SUBD. 2, CITED.—Where a mortgage of personalty is not in fraud of creditors, it is the duty of the sheriff, on finding the mortgagee in possession, to allow him to remain, and to levy upon the residue over the mortgage, by giving notice under section 9, *supra*, providing that where the defendant in execution has an interest in personal property, but is not entitled to possession, a levy is made by giving notice thereof to the one entitled to possession.

2. SAME—SAME—SAME—TAKING POSSESSION—TRESPASSER.—A sheriff becomes a trespasser by taking property under a writ of attachment from a mortgagee in possession under a valid mortgage.

3. CHATTEL MORTGAGE—INSOLVENCY—PREFERENCE.—A debtor, even in failing circumstances, may prefer creditors, if done in good faith, by giving a chattel mortgage to such creditors.

4. SAME—DEFECTIVE EXECUTION—DELIVERY OF POSSESSION — VALIDITY AS AGAINST SUBSEQUENT ATTACHMENT.—The voluntary delivery of property by a mortgagor to the mortgagee under a mortgage, not formally executed, but valid as between the parties, prior to the levy of an attachment, renders the mortgage valid as against such attaching creditors.

5. SAME—INSOLVENCY—PREFERENCE—EXCESSIVE VALUE OF STOCK MORT-GAGED—NOT FRAUDULENT AS TO CREDITORS—GOOD FAITH.—Where a debtor in failing circumstances executed a mortgage of a stock of merchandise to a creditor, providing that such mortgagee should take possession and conduct the business theretofore conducted by the mortgagor until his debt was made out of the proceeds, and then the residue to be returned, such mortgage is not fraudulent and void as to the other creditors because of the excessive value of the stock mortgaged over the debt secured, where it appears that the mortgage was made in good faith and that to segregate a portion of the stock to secure the claim would have resulted in injury not only to the mortgagor but to other creditors.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa. A. C. Baker, Judge. Reversed.

The facts are stated in the opinion.

W. J. Kingsbury, and Joseph Campbell, for Appellant.

Property in the possession of a mortgagee cannot be seized and taken under an execution or attachment directed against the mortgagor. Jones on Chattel Mortgages, sec. 557; Cobbey on Chattel Mortgages, secs. 724-725; Freeman on Executions, secs. 116, 117; *Woodson* v. *Carson*, 135 Mo. 521, 35 S. W. 1005, 37 S. W. 197; *Poundstone* v. *Holt*, 5 Colo. App. 66, 37 Pac. 35; *Hausner* v. *Leebrick*, 51 Kan. 591, 33 Pac. 375; *Francisco* v. *Ryan*, 54 Ohio St. 307, 56 Am. St. Rep. 711, 43 N. E. 1045.

And this is true even though the chattel mortgage be executed by the debtor while in failing circumstances. *Tootle, Hosea & Co.* v. *Coldwell*, 30 Kan. 125, 1 Pac. 329; *Avery* v. *Eastes*, 18 Kan. 505; *Campbell* v. *Warner*, 22 Kan. 604.

And delivery of possession cures any defects that may exist in the mortgage. *Cameron* v. *Marion*, 26 Kan. 612;

Arizona 5—20

*Bank* v. *Sargent,* 20 Kan. 576; *Franhauser* v. *Elliot,* 22 Kan. 127, 31 Am. Rep. 171; *Chapman* v. *Sargent,* 6 Colo. App. 438, 40 Pac. 849; *Sherwin* v. *Gaghagen,* 39 Neb. 238, 57 N. W. 1005.

C. W. Wright, for Appellee.

STREET, C. J.—1. This is an action in claim and delivery, brought by the appellant, the Farmers and Merchants Bank, as plaintiff, in the district court of Maricopa County, against L. H. Orme, sheriff of Maricopa County, to recover possession of a stock of hardware which L. H. Orme, as sheriff, held in his possession under a writ of attachment issued out of the said district court at the instance of the John Deere Plow Company against the Arizona Hardware Company on a suit brought by the John Deere Plow Company to recover the sum of $5,826.89. The value of the goods, as laid in the complaint of plaintiff and in the affidavit to obtain the writ in claim and delivery, was six thousand dollars. The Arizona Hardware Company is a corporation doing business in Tempe, Arizona, and on the twenty-fifth day of October, 1895, was indebted to the Farmers and Merchants Bank on an overdue note in the sum of seven hundred and fifty dollars, with interest thereon, and at the same time was indebted to the John Deere Plow Company in the sum of $5,826.89, as evidenced by seven overdue promissory notes, with interest thereon. The John Deere Plow Company on that day brought suit in the district court in Maricopa County against the Arizona Hardware Company, and obtained a writ of attachment against the property of said company, and placed the same in the hands of L. H. Orme, appellee, as sheriff of said county, for levy. On that day, and before the writ of attachment was levied by the sheriff, the Farmers and Merchants Bank went to Henry E. Kemp, the president of the Arizona Hardware Company, and told him that if their claim was not paid or secured they would have to issue a writ of attachment. Whereupon Kemp, as president of the Arizona Hardware Company, executed a chattel mortgage on all the stock of goods in the store of the Arizona Hardware Company at Tempe to the Farmers and Merchants Bank, and delivered it to them, and also turned over and delivered to the Farmers and Merchants Bank all the goods in their store at Tempe, and all book-accounts, promissory notes, business, etc., and put them in

possession thereof, to control and manage the business until
they should obtain from the sales of goods enough money to
pay and settle their claim of seven hundred and fifty dollars,
with interest, and attorney's fees of one hundred dollars.
This took place in the forenoon of that day, and was com-
pleted by 9 or 9:30 o'clock in the morning.  The sheriff, L. H.
Orme, with his writ of attachment, sued out at the instance
of the John Deere Plow Company, went to the store of the
Arizona Hardware Company on the same day about 1 or 1:30
o'clock in the afternoon, and found officers and agents of the
bank in possession of the store and of all the goods.   The
sheriff told E. G. Frankenberg, the president of the Farmers
and Merchants Bank, whom he found in possession, that he
had a writ of attachment, and was going to levy upon the
goods.   Mr. Frankenberg told him that he (Frankenberg)
had possession of the goods in the name of the bank, and that
the bank held them as security for a debt of the hardware
company, and that he would not surrender possession of the
store or the goods.   The sheriff asked him if he would resist,
and whether he (the sheriff) would have to use force to put
him out; and Frankenberg told him that he would resist, and
that the sheriff could not get him out without force.   The
sheriff went away from the store, and after an hour or more
returned, and did throw Frankenberg and the agents of the
Farmers and Merchants Bank out of the store and possession
of the goods, and did take possession of the entire stock of
goods himself, under the writ of attachment.   Thereupon the
Farmers and Merchants Bank brought their action in claim
and delivery, and obtained possession of the goods by virtue
of their writ in claim and delivery, and at the time of the
trial of the action in the district court were in possession of
the goods, except such as had been sold in the course of trade.
It was the testimony of Mr. Frankenberg at that trial that
he thought they had sold enough goods to get their money
back, but at that time it had not been applied upon the pay-
ment of the note; that they had taken in enough money by
the sale of the goods to pay the note of the hardware company
to the bank; and that they were willing then to let the balance
of the goods go, but that, since the attachment of the John
Deere Plow Company had been levied, five or six writs of
garnishment had been served upon the bank in suits against

the Arizona Hardware Company. The cause was tried in the district court without the aid of a jury, and the court adjudged that the plaintiff take nothing by his suit, and that the defendant have and recover of and from the plaintiff, and Mons Ellingson and E. G. Frankenberg, sureties on the bond in the suit in claim and delivery, judgment for the return of the goods, or the sum of six thousand dollars, the assessed value of the goods, at the election of the defendant.

Many assignments of error have been made by the appellant, and appellee has likewise alleged many reasons why the plaintiff should not be allowed to recover in his action. Many of those urged by the appellant relate principally to the introduction of the writ of attachment and the levy, offered by the appellee, as defendant in the district court, in justification of his action in making the levy and seizing the goods; while many of the objections of appellee relate to the execution of the mortgage, claiming that it was not within the power of the president of the Arizona Hardware Company to make such a mortgage as was made by him and delivered to the Farmers and Merchants Bank, and alleging irregular execution, and other matters pertaining to the validity of the mortgage. All the objections, however, of that nature urged by appellant against the writ, and by appellee against the mortgage, are somewhat technical; and the court feels that, in the decision of this appeal, the matter can be disposed of by looking into the substance of the rights of the two creditors respectively; and the question plainly is whether the bank was legally and lawfully in possession of the stock of goods of the hardware company at the time the sheriff levied the attachment for the plow company, or whether such possession was in fraud of the rights of the plow company and other creditors, as it may be viewed in the light—first, of the right of a debtor in failing circumstances to prefer a creditor, and second, in the light of turning over property for the security of a debt, the value of which is greatly in excess of the amount of the debt.

2. If the mortgage was not in fraud of creditors, it was plainly the duty of the sheriff, on finding the bank in possession of the goods when he went to make the levy, to have allowed the goods to have remained in its possession, and for him to have seized upon the residue by giving notice under

the statute. Session Laws of 1889 (Act No. 20, sec. 9, subd. 2) provides: "A levy on personal property is made by taking possession thereof, when the defendant in execution is entitled to the possession; when the defendant in execution has interest in personal property but is not entitled to possession thereof, a levy thereon is made by giving notice thereof to the person who is entitled to the possession, or one of them, where there are several." Or the plaintiff in the writ of attachment might have brought garnishment proceedings upon the bank, and in that way secured itself in the residue. The mortgage given by the hardware company to the bank was drawn on a printed chattel-mortgage blank, in which it is provided that, until the mortgagee should take possession of the goods, which he might do under certain circumstances, therein expressed, the mortgagor should remain in possession, while in the written portion it was declared that all of the property had been turned over and delivered to, and was in the possession of, the said party of the second part. "If a mortgage contain a provision that the mortgagee may take possession at any time whenever he deems himself insecure, his exercise of this right invalidates any attachment that may have been previously made while the property was in the mortgagor's possession, and the sheriff becomes liable in trespass if he does not surrender possession upon the mortgagee's demand." Jones on Chattel Mortgages, 558, citing *Hall* v. *Sampson*, 35 N. Y. 274, 91 Am. Dec. 56. "A levy on mortgaged property for a debt of the mortgagor cannot be made after the mortgagee has taken possession, unless the mortgage be fraudulent and void. The liens created by a mortgage and attachment, respectively, on the same property, are essentially different, and cannot coexist." Cobbey on Chattel Mortgages, 724. Therefore, unless the mortgage given by the hardware company to the bank was void by reason of being in fraud of the rights of the plow company, the sheriff became a trespasser in taking the property from the agent of the bank.

3. Let us now look at some of the authorities in regard to the rights of a debtor in failing circumstances to prefer his creditors. "A debtor, even in failing circumstances, may prefer creditors, if the same is done in good faith; and this may be done, not only in the form of actual payment of

money to a particular creditor, but also in the form of sale or appropriation of property, or the giving of a chattel mortgage to such creditors.'' *Tootle etc.* v. *Coldwell,* 30 Kan. 125, 1 Pac. 329; *Hausner* v. *Leebrick,* 51 Kan. 591, 33 Pac. 375. Both of these cases are from the state of Kansas, and the court, in the latter case, repeated the language which appears in 1 Pac., and also said: ''This court has also ruled that in all cases where there is a voluntary delivery of the property by the mortgagor to the mortgagee under the mortgage, such delivery will render the mortgage valid as to all persons not then having any specific right to a lien upon the property, provided the mortgage was previously valid as between the parties thereto.'' The latter quotation is decisive of the objection of appellee that the mortgage was not formally executed at the time of its delivery, for, as between the mortgagor and mortgagee, it was valid, and delivery of possession was made under it, and was recognized as subsisting and valid between the mortgagor and the mortgagee. If the mortgagee had not been in possession, but was claiming under a lien, and asking to be put into possession by virtue of his lien, the objection of appellee would be of force; and it would be necessary for the appellant to show that he, as mortgagee, had a mortgage which complied with the statute in every particular, not only as to its execution and its acknowledgment, but as to its registration. *Chapman* v. *Sargent,* 6 Colo. App. 438, 40 Pac. 849; *Sherwin* v. *Gaghagen,* 39 Neb. 238, 57 N. W. 1005.

4. Upon the question that the mortgage was fraudulent as to the other creditors, because goods to the value of six thousand dollars had been turned over to secure an indebtedness of somewhere about, yet less than, one thousand dollars, we understand the law to be that a mortgage made to secure an honest debt is valid as to the creditor secured, though the purposes and intent of the mortgagor may have been fraudulent; yet the parties who take such security must act in good faith, and so as not to unnecessarily hinder, delay, or deceive other creditors. But the taking of a mortgage of an amount in excess of the debt is but a badge of fraud, and only becomes a fraud in law when the purpose is to protect the debtor's interest from other creditors. If he took a mortgage in excess of the amount necessary for his security, for the purpose of hiding the debtor's interest from other creditors, instead

of in good faith protecting his own interest, he cannot ask to have his own interest protected when the fraud is discovered. If the mortgage is taken in good faith, without any fraudulent purpose upon the part of a creditor, the transaction will not be void even though the debtor intended, by giving such mortgage, to hinder and delay his other creditors in the collection of their debts, and even though the person secured had knowledge of such purpose. Different is the law in the case of a mortgagee from what it is with a party who purchases property of an insolvent debtor with notice that the purpose of the seller is to hinder and defraud his creditors; for in that case the purchaser will not be protected, although he may have paid for the property its full value. That rule does not apply in the case of a mortgage. A mortgage given by a failing debtor to secure an honest debt is not in violation of any principle of law, nor was it fraudulent, although the parties knew that the claim of other creditors would be thereby defeated. *Showman* v. *Lee,* 86 Mich. 556, 49 N. W. 578; *Patrick* v. *Riggs,* 105 Mich. 616, 63 N. W. 534; *Woodson* v. *Carson,* 135 Mo. 521, 35 S. W. 1006, 37 S. W. 197; *First Nat. Bank* v. *Lowrey,* 36 Neb. 290, 54 N. W. 571, 572. In this case there is no allegation, or even insinuation, of actual fraud. The execution and delivery of the mortgage by the hardware company to the bank was *bona fide,* given and accepted in the best faith, to enable the one to pay and the other to receive payment for an existing indisputable debt; and when that result was accomplished the residue of the property was to be turned back to the debtor, wherewith he might continue the business and pay other debtors. Whatever fraud could affect the transaction would have to arise from a presumption which the law creates; and, from the circumstances of excess of value alone over the debt, the law creates but a sign, a mark, a badge of fraud, which is destroyed as an index when the *bona fides* of the transaction is revealed by the manifest facts in which the transaction is imbedded, or when made apparent by extrinsic evidence. The determination of fraud from excessive value is affected also by a knowledge of whether only one article, not capable of division, or a combined number of articles, not capable of practical severance, is mortgaged and turned over for security, or whether numerous articles are dealt with, any one of

which, or any combined number of which, less than the whole, and capable of severance, would have been ample security. A store of goods is a combination of a multitude of salable articles, and, with the business it creates and by which it is kept alive, becomes an entity. A stock of hardware is made up of a variety of articles, and to make of them a store for their sale and disposal in the regular line of merchandry the articles and classes of articles composing the stock are so related to each, and so interdependent on each other, that they form an entity, which becomes destroyed by separating the articles composing the whole. This mortgage was given so as to enable the bank to make their money out of the store by "keeping store," and selling goods; and the more perfectly the store and business could be preserved, the more easily the money could be made to discharge the debt, and the sooner the residue could be turned back to the mortgagor. The object desired could not have been so easily obtained, nor would the rights of other creditors have been so well conserved, if a body of goods of a certain class, or of various classes, had been taken out of the store and sold separate from the business. It would have taken more goods thus to have paid the debt, and left the value of the residue diminished to a greater degree. We cannot say the mortgage was fraudulent because of excessive value of stock mortgaged over the debt secured. *Mercantile Co. v. Gardiner,* (S. D.) 58 N. W. 557, 559.

The judgment of the district court is reversed, and the cause remanded to the same court for a new trial.

Sloan, J., Davis, J., and Doan, J., concur.