**BARRY v. LAWRENCE WAREHOUSE CO. et al.**

No. 12515.

United States Court of Appeals
Ninth Circuit.

July 12, 1951.

Allan K. Perry, Phoenix, Ariz., for appellant.

W. R. Wallace, Jr., W. R. Ray, John R. Pascoe and Wallace, Garrison, Norton & Ray, all of San Francisco, Cal., Fennemore, Craig Allen & Bledsoe, Phoenix, Ariz., for appellee Lawrence Warehouse Co.

Gust, Rosenfeld, Divelbess, Robinett & Linton, Phoenix, Ariz., for appellee Valley Nat'l Bank of Phoenix.

Before STEPHENS, Circuit Judge, and BOWEN and LEMMON, District Judges.

STEPHENS, Circuit Judge.

Appeal by the trustee in bankruptcy of the Central Auto Supply Company, an Arizona corporation from a judgment of the United States District Court for the district of Arizona, holding that the pledge of non-negotiable warehouse receipts to the Valley National Bank of Phoenix, representing goods allegedly deposited with Lawrence Warehouse Company, a California corporation, entitled the bank to retain possession of the goods to satisfy debts owing the bank by the bankrupt.

Long prior to the filing of its petition in bankruptcy the Central Auto Supply Company, a retail dealer in supplies, found itself in financial difficulty. In order to continue to operate as a going concern, and in the hope of extricating itself from financial distress, Central borrowed money from the defendant bank. To obtain these loans, Central allegedly entered into certain transactions in conformity with what has become known commercially as "field warehousing". The object of this plan was to afford security to the bank through a transfer of possession and control of Central's stock in trade to the Lawrence Warehouse Company, and the issuance by Lawrence of warehouse receipts in favor of the bank.

In order to accomplish this, Central executed a lease to the warehouse company of a portion of its premises, containing the major part of its stock in trade. Wire mesh fences were erected which separated the leased area from the other portions of the floor and locks were placed upon doors opening on the field warehouse area. The keys were held in the custody of Lawrence personnel. Conspicuous signs were posted at points along the enclosed area stating:

"Notice—All Commodities in or Upon These Premises Are In The Custody of Lawrence Warehouse Company"

When merchandise, purchased by Central from a multitude of wholesalers, jobbers and manufacturers, arrived at the premises, it was placed within the enclosed area. Lawrence then issued non-negotiable warehouse receipts for the goods in favor of the bank, in conformity with the Arizona Uniform Warehouse Receipts Act, Arizona Code, Ann., 1939, § 52–801 et seq. Loans were made to Central by the Bank based upon a percentage of the cost value of this inventory.

Persons who had formerly been employees of Central were employed by the warehouse company to act as custodians of the goods. Salaries were paid to these employees by the warehouse company, which was reimbursed like amounts by Central.

As the inventory increased, more money was advanced to Central by the bank, on the issuance by the warehouse company of additional warehouse receipts. When the inventory decreased due to sales made by Central in the course of business, the bank required repayment of the loans to that extent in order to maintain a safe margin of security for the loan.

The trial court concluded that the pledge of the warehouse receipts representing goods stored on what was formerly the debtors' premises was valid as against the trustee in bankruptcy and third parties, and judgment was entered for the defendants.

It is the contention of the appellant-trustee that the judgment of the district court is in error because of § 62–522 of the Arizona Code, Ann. of 1939. This statute provides:

"Chattel mortgage of merchant's stock void.—A mortgage, deed of trust or any other form of lien attempted to be given by the owner of a stock of goods, wares or merchandise daily exposed to sale, in parcels, in the regular course of the business of such merchandise, and comtemplating a continuance of possession of said goods and control of said business, by sale of said goods by said owner, shall be deemed fraudulent and void."

Appellant contends that the system of "field warehousing" is repugnant to § 62–522, and that therefore as trustee in bankruptcy of the bankrupt corporation he is entitled to the possession of the goods in controversy for the benefit of the general creditors of the bankrupt by virtue of § 70, sub. e of the Bankruptcy Act. Title 11 U.S.C.A. § 110, sub. e.[1]

The trustee in bankruptcy is vested with all rights possessed by creditors at the time of bankruptcy by virtue of which transfers or obligations of the bankrupt may be avoided. Title 11 U.S.C.A. § 110, subs. a, e. A transfer which is fraudulent or voidable under any state law by any creditor of the debtor having a provable claim is null and void as against the debtor's trustee in bankruptcy. 11 U.S.C.A. § 110, sub. e. See Security Warehousing Co. v. Hand, 1907, 206 U.S. 415, 27 S.Ct. 720, 51 L.Ed. 1117.

Subsequent bankruptcy of the debtor leaves pledged property subject to the pledgee's lien even if the pledged property remains on what was formerly the debtor's premises provided the goods are no longer in the debtor's possession and control. Union Trust Co. v. Wilson, 1905, 198 U.S. 530, 25 S.Ct. 766, 49 L.Ed. 1154. If, however, under applicable state law, there has been no effective change of possession the trustee takes title to the property free of the lien and the attempted pledge fails. Security Warehousing Co. v. Hand, supra.

The purpose of Section 62–522, according to the Supreme Court of Arizona, is not only to protect the innocent purchaser of merchandise exposed to sale in the regular course of business from taking it subject to a hidden lien, but to protect creditors of the vendor as well. Hartford Fire Ins. Co. v. Jones, 1926, 31 Ariz. 8, 250 P. 248, rehearing denied and opinion amended, 1927, 31 Ariz. 289, 252 P. 192. The statute thus permits avoidance by creditors of attempted liens on a merchant's stock in trade where possession and control of such goods remain in the owner.

We see in this statute no express prohibition of the commercial practice of field warehousing. Consult 42 Columbia Law Review 991. If a field warehousing arrangement is conceived in good faith and carried on with the proper safeguards, possession and control of the property are not with the owner, but are transferred to the warehousing company. The fact that the purpose of the arrangement is to obtain financing rather than storage does not in itself nullify the plan. Union Trust Co. v. Wilson, supra. There are no reported Arizona cases which either sanction or condemn this means of financing. Our investigation has yielded an expression by the Arizona Supreme Court on a somewhat analogous situation, however.

In Farmers' & Merchants' Bank v. Orme, 1898, 5 Ariz. 304, 52 P. 473, the bank sought to recover possession of a stock of hardware and other chattels held by the sheriff under a writ of attachment levied to satisfy a debt due the John Deere Plow Company from the Arizona Hardware Company. Prior to the levy on the goods by the sheriff, the bank advised the president of the hardware company that if the

---

1. Title 11 U.S.C.A. § 110, sub. e:

 "(1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor.

 "(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate. The trustee shall reclaim and recover such property or collect its value from and avoid such transfer or obligation against whomever may hold or have received it, except a person as to whom the transfer or obligation specified in paragraph (1) of this subdivision e is valid under applicable Federal or State laws.

 "(3) For the purpose of such recovery or of the avoidance of such transfer or obligation, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction."

bank's claim were not paid or secured, they would have to issue a writ of attachment. The president of the hardware company thereupon executed a chattel mortgage of all the stock of goods in the hardware store to the bank "and put them in possession thereof, to control and manage the business until they should obtain from the sales of goods enough money to pay and settle their claim * * *". This transfer of possession was accomplished by placing agents and officers of the bank in charge of the goods at the hardware store. The goods were not moved from the store, and nothing else was done to effect the change in possession. On the refusal of the president of the bank to surrender possession of the goods pursuant to the writ of attachment in favor of the John Deere Plow Company, the sheriff forcibly took possession and this action was brought by the bank to recover possession from the sheriff. The judgment of the trial court for the defendant was reversed by the Supreme Court of Arizona. The court stated:[2]

"The question plainly is, whether the bank was legally and lawfully in possession of the stock of goods of the hardware company at the time the sheriff levied the attachment for the plow company, or whether such possession was in fraud of the rights of the plow company and other creditors. * * *

"A mortgage given by a failing debtor to secure an honest debt is not in violation of any principal of law, nor was it fraudulent, although the parties knew that the claim of other creditors would be thereby defeated. * * *

"This mortgage was given so as to enable the bank to make their money out of the store by 'keeping store,' and selling goods; and the more perfectly the store and business could be preserved, the more easily the money could be made to discharge the debt, and the sooner the residue could be turned back to the mortgagor. The object desired could not have been so easily obtained, nor would the rights of other creditors have been so well conserved, if a body of goods of a certain class, or of various classes, had been taken out of the store, and sold separate from the business. It would have taken more goods thus to have paid the debt, and left the value of the residue diminished to a greater degree. * * *"[3]

Although the Arizona statute upon which appellant relies, Arizona Code, Ann. of 1939, § 62–522, was in effect at the time the Orme case was decided, Revised Statutes of Territory of Arizona, 1887, Par. 38, it is not mentioned in the opinion. The tenor of the court's language convinces us that an application of the statute would not have changed the result. It condemns secret liens on stock in trade *where there has been no change of possession and control*. Determination of possession involves a consideration of all of the surrounding circumstances including the good faith of the parties. Nolte v. Winstanley, 1914, 16 Ariz. 327, 145 P. 246. Where there has been no change in physical location of the property a purported change in possession will be subject to close scrutiny. See Wightman v. King, 1926, 31 Ariz. 89, 250 P. 772.

Robert E. Kersting, president of the bankrupt, a witness for plaintiff, testified that under the arrangement he had the power to sell the entire stock in trade provided he would immediately thereafter repay the amounts owed to the bank; that the money paid for stock sold was controlled by a Central employee and was later deposited to Central's bank account; that there was no requirement that the bank be notified until after sales were made; that if they sold more than the limit set by the bank they were "technically bound" until more money was paid to the bank; that 90% of sales made were credit sales; that "the Valley Bank to us was just another creditor as anybody else. We would not pay them any sooner or any later * *."

Depositions offered by plaintiff contained testimony that Central's creditors had no

---

2. At pages 475, 476 of 52 P.
3. After the case was remanded, judgment for the bank was affirmed in Orme v. Farmers' & Merchants' Bank, 1900, 7 Ariz. 208, 62 P. 1114.

knowledge that goods sold to Central was immediately being "warehoused" by Lawrence. There was also testimony that Central employees had free access to the stock during working hours.

Evidence introduced on behalf of defendants revealed that the bank gave written delivery instructions to the Lawrence personnel indicating the dollar amount of goods which could be sold and delivered by Central. Deliveries made from the warehouse area were recorded by Lawrence personnel and were reported to the bank. Thereafter Central would either present a check to the bank for the amount that had been loaned on the merchandise sold or would present a warehouse receipt for additional merchandise which had been purchased and transferred to the warehouse area. These receipts would be accepted by the bank as substitute collateral instead of reducing the loan.

During business hours, the warehouse gates and padlocks were left open. On one occasion merchandise improperly taken from this area was recovered by the warehouse manager. Toward the end of the operation, deliveries were stopped by Lawrence completely on an occasion when the dollar amount was overdrawn. Further deliveries were permitted only after permission was given by the bank.

The warehouse was locked when employees of Lawrence were not on the premises, and no employees of Central or the bank were allowed within the warehouse area unless a Lawrence employee was present. At the close of the transaction the goods were turned over to the bank by

Lawrence, through the removal of Lawrence signs and the delivery of the keys.

The trial court found that possession and control of the goods had passed to the warehouse company. Rule 52(a), Fed.Rules Civ.Proc. 28 U.S.C.A., provides that " * * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * * " A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 1948, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746.

On a review of the record before us we are not left with a definite and firm conviction that a mistake was made by the trial court in finding possession and control had passed to the warehouse company. Such being the case, and with due regard to the opportunity of the trial court to judge of the credibility of the witnesses, these determinations may not be set aside.

While the applicability of the Arizona Bulk Sales Law, Arizona Code Ann., 1939, § 58–301,[4] was not raised by either counsel on this appeal, we feel that the facts warrant a brief reference thereto.

In Heffron v. Bank of America Nat. Trust & Savings Ass'n, 9 Cir., 1940, 113 F.2d 239, 133 A.L.R. 203, we held that the California Bulk Sales Law, California Civil Code § 3440, did not prohibit a pledge of warehouse receipts issued in conformity with the California Warehouse Receipts

4. § 58–301. "Formalities for sale in bulk —Failure therein.—No person in the business of buying commodities and selling the same in small quantities, for purposes of profit, shall at a single transaction, and not in the regular course of business, sell, assign, or deliver the whole or seventy-five [75] per cent of his stock in trade, unless he shall, not less than ten [10] days previous to such sale, assignment or delivery, record in the office of the county recorder in the county in which he conducts his business, a notice of his intention to make such sale, assignment or delivery. The notice shall

be in writing, and acknowledged, and shall be published in a newspaper, at least six [6] times if a daily and three [3] times if a weekly, in the county and nearest the place where said vendor conducts his said business; and shall also be posted in a conspicuous place in plain sight of the public upon said premises during said period of ten [10] days. Any such sale, assignment or delivery made without the recording publication and posting of such notice as herein required, shall be void as against all creditors of the vendor at the time of such sale, assignment or delivery."

Act, representing stock in trade held under a field warehouse arrangement. See In re Convisser, 9 Cir., 1925, 6 F.2d 177.

 The Arizona Bulk Sales Law, while not a duplicate of the California Statute, is an enactment based upon the same policies and must be construed so as not to limit the effect of the Arizona Uniform Warehouse Receipts Act, later enacted. Arizona Code, 1939, § 52–801, et seq. The latter act must be considered in recognition of the desire to make the Uniform Warehouse Receipts Act universal in its application throughout the commercial world. Salt River Valley Water Users' Ass'n v. Peoria Ginning Co., 1924, 27 Ariz. 145, 231 P. 415. We therefore conclude that the Arizona Bulk Sales Act does not prohibit the transactions here under consideration, where carried out with proper safeguards and in conformity with the Arizona Uniform Warehouse Receipts Act. See Heffron v. Bank of America Nat. Trust & Savings Ass'n, supra.

Affirmed.