# UNION TRUST COMPANY, AND SECURITY WARE-HOUSING COMPANY *v.* WILSON.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FROM THE SEVENTH CIRCUIT.

No. 424. Submitted January 6, 1905.—Decided May 29, 1905.

Prior to the petition the bankrupt, a wholesale merchant in Chicago, walled off part of the basement of his store and let it at a nominal rental to a warehouse company and there stored goods, so that they were not seen from the store, and the company alone had access thereto; and it exhibited signs to the effect that it occupied the premises and had possession of the goods, it charged the merchant for storage, and issued to him certificates or receipts for the goods, which he pledged and endorsed over to banks as collateral for loans. In an action brought by the trustee who claimed that goods were in the possession of the bankrupt and not of the warehouse company, *Held,* that:

A bailee asserting a lien for charges has the technical possession of the goods.

The transfer of a warehouse receipt is not a symbolical delivery, but a real delivery to the same extent as if the goods had been transported to another warehouse named by the pledgee.

Upon the facts in this case there is no reason to deny such a place of storage the character of a public warehouse so far as the Illinois statutes are concerned.

The receipts issued in this case were to be deemed valid warehouse receipts so that their endorsement and delivery as security for loans constituted a pledge of the goods represented thereby valid as against attaching creditors, and if the receipts were not valid as warehouse receipts, the transaction constituted an equally valid pledge of the goods as such security.

UPON the facts the following questions of law were certified:

1. Whether, upon the facts above recited, the receipts issued by the warehousing company are to be deemed valid warehouse receipts, so that their endorsement by Flanders to the trust company, as security for loans, constituted a pledge or pledges to the trust company of the leather covered by such receipts, which would be valid against attaching creditors.

2. Whether, if the receipts are not to be deemed valid as *warehouse receipts,* upon the facts above recited, the transactions are to be regarded as constituting pledges of such leather

by Flanders to the trust company, which would be valid as against attaching creditors.

3. If there was no pledge, whether the trust company, under the facts above recited, acquired an equitable lien upon such leather that is superior to the title thereto of the trustee in bankruptcy.

*Mr. Henry S. Robbins,* with whom *Mr. Charles R. Holden* was on the brief, for the Union Trust Company and the Security Warehousing Company:

The receipts are valid and their endorsement constituted a valid pledge. They were issued under a new system of warehousing, created by the requirements of modern commerce, and resulting from the commendable aim of our business men to cheapen the cost of production and distribution.

The question here is—as it was in the case of bulk warehousing of grain—whether the law will obstruct, or conform to the requirements of modern commerce.

While it is competent for a State, within constitutional limits, to regulate warehousing within its borders, and declare what shall constitute a warehouse and what a warehouse receipt, Illinois has not, as respects this kind of warehousing, seen fit to adopt any statute imposing any restrictions. Article XIII, § 1, Const. Illinois, 1870; §§ 1, 2, 24, Rev. Stat. Illinois, ch. 114.

The enclosure in this case falls within the definition of a public warehouse; property was stored there for compensation. *Union Trust Co.* v. *Trumbull,* 137 Illinois, 146.

Ample steps were taken to notify anyone seeing the property or the premises, as to actual possession and control.

Placing property in a room, leased to, and kept locked by, a vendee or pledgee or warehouseman, accompanied by a continuous display of signs and placards plainly indicating the vendee's, pledgee's or warehouseman's interest, is a sufficient change of possession to make the transaction a valid one. *Hatch* v. *Oil Co.,* 100 U. S. 124; *Sumner* v. *Hamlet,* 12 Pick.

76; *First Nat. Bank* v. *Penna. Trust Co.*, 124 Fed. Rep. 968; *Bank of Rome* v. *Haselton*, 83 Tennessee, 216; *Sharp* v. *Warehouse Co.*, 9 Reporter, 572; *Kentucky Furnace Co.* v. *City Bank*, 25 Ky. Law Rep. 28; *Fidelity* v. *Roanoke Iron Co.*, 81 Fed. Rep. 439; *Am. Warrant Co.* v. *German*, 126 Alabama, 194; *Dunn* v. *Train*, 125 Fed. Rep. 221; *Allen* v. *Hollander*, 128 Fed. Rep. 159; *Gibson* v. *Stevens*, 8 How. 383; *Lickbarrow* v. *Mason*, 1 Sm. Leading Cas., 7th Am. ed., 1197; *Northrop* v. *Bank*, 27 Ill. App. 527; *Ward* v. *Am. Trust Bank*, 71 Ill. App. 20; *Manufacturing Co.* v. *Mitts Co.*, 101 Virginia, 579; *Rice* v. *Cutler*, 17 Wisconsin, 362.

Even if the first question is answered in the negative the transactions constituted a valid pledge by Flanders to the trust company. *Proctor* v. *Shotwell*, 79 S. W. Rep. 728.

If there was no pledge still the Trust Company acquired an equitable lien that is superior to the title of the trustee in bankruptcy. *Union Trust Co.* v. *Trumbull*, 137 Illinois, 146.

Equitable liens have also been upheld by this court. *Walker* v. *Brown*, 165 U. S. 654.

Such equitable lien is superior to the title of the trustee in bankruptcy, and was so held under the bankrupt act of 1841, *Fletcher* v. *Morey*, 2 Story, 555; *Winsor* v. *McLellan*, 2 Story, 492, and of 1867, *Hauselt* v. *Harrison*, 105 U. S. 401; *Yeatman* v. *Savings Inst.*, 95 U. S. 764; *Stewart* v. *Platt*, 101 U. S. 731.

The bankrupt was estopped from denying the lien of the Trust Company and so is the trustee in bankruptcy. *Re Standard Laundry Co.*, 116 Fed. Rep. 476; *Pennington* v. *Hunt*, 20 Fed. Rep. 195; *Bank* v. *Trust Co.*, 124 Fed. Rep. 968; *Re Rodgers*, 125 Fed. Rep. 169.

As to the trustee taking subject to liens and conditional sales and the enforcement of the lien, see *Re Economical Printing Co.*, 110 Fed. Rep. 514; *Re Garcewich*, 115 Fed. Rep. 87; *Hewitt* v. *Berlin Machine Works*, 194 U. S. 296; *Re Chase*, 124 Fed. Rep. 753; *Chattanooga Bank* v. *Iron Co.*, 102 Fed. Rep. 755; *Re Josephson*, 116 Fed. Rep. 404; *In re Hinsdale*, 111 Fed. Rep. 502; *In re Sewell*, 111 Fed. Rep. 791; *Chesa-*

*peake Shoe Co.* v. *Seldner,* 122 Fed. Rep. 593; *Re Pekin Plow Co.,* 112 Fed. Rep. 308; *Re Butterwick,* 131 Fed. Rep. 371; *Re Thorp,* 130 Fed. Rep. 371.

*Mr. Edwin Burritt Smith, Mr. George Packard* and *Mr. Vincent J. Walsh* for Wilson, trustee:

The receipts issued by the Security Company were not true warehouse receipts. Their endorsement and delivery to the Trust Company, therefore, as security for loans, was not a pledge of the leather covered by them which would be valid as against attaching creditors. *Burton* v. *Cunyea,* 40 Illinois, 320; *Thornton* v. *Davenport,* 2 Illinois, 295; *Hamilton* v. *Russell,* 1 Cranch, 309; *Warner* v. *Norton,* 20 How. 448; *Ticknor* v. *McClelland,* 84 Illinois, 471; *Hervey* v. *Locomotive Works,* 93 U. S. 664; *Dooley* v. *Pease,* 180 U. S. 126; *Harkness* v. *Russell,* 118 U. S. 663; *Gibson* v. *Stevens,* 8 How. 384; *Conrad* v. *Atlantic Ins. Co.,* 1 Pet. 445; *Geilfuss* v. *Corrigan,* 95 Wisconsin, 651; *National Bank* v. *Whitehead,* 149 Indiana, 560; *State* v. *Watson,* 141 Missouri, 338; *Shepardson* v. *Cary,* 29 Wisconsin, 34; *State* v. *Bryant,* 63 Maryland, 66; *Staubli* v. *National Bank,* 11 Washington, 426; *Thorne* v. *National Bank,* 37 Ohio St. 254; *Bell & Co.* v. *Glass Works.,* 48 S. W. Rep. 440; *Yenni* v. *McNamee,* 48 N. Y. 614; *Adams* v. *National Bank,* 2 Fed. Rep. 174; *Broadwell* v. *Howard,* 77 Illinois, 305; *National Bank* v. *Wilder,* 34 Minnesota, 149; *Merchants' Bank* v. *Hibbard,* 48 Michigan, 118; *Union Trust Co.* v. *Trumbull,* 137 Illinois, 146; *In re Rodgers,* 125 Fed. Rep. 169; *National Bank* v. *Jagode,* 186 Pa. St. 556; *Moores* v. *Jagode,* 195 Pa. St. 163; *Trust Co.* v. *Dandridge,* 37 S. W. Rep. 288; *Bucher* v. *Commonwealth,* 103 Pa. St. 528.

If the receipts were not true warehouse receipts, the transactions did not constitute a pledge of the leather by Flanders to the Trust Company which would be valid against attaching creditors. *Casey* v. *Cavaroc,* 96 U. S. 467; *Sinsheimer* v. *Whitley,* 111 California, 378; *Second Nat. Bank* v. *Gilbert,* 174 Illinois, 485; *Harding* v. *Eldridge,* 71 N. E. Rep. 115; *Sholes*

v. *Asphalt Co.*, 183 Pa. St. 528; *Union Trust Co.* v. *Trumbull*, 137 Illinois, 146; *George* v. *Pierce*, 123 California, 172; *Watson* v. *Dealy*, 59 N. Y. Supp. 623; *Harington* v. *Blanchard*, 70 N. H. 597; *Story* v. *Cordell*, 13 Montana, 204; *Button* v. *Rathbone*, 126 N. Y. 187; *Caperton* v. *McCormick*, 74 Mississippi, 85; *Martin* v. *Sexton*, 72 Ill. App. 395; *Moores* v. *Redding*, 167 Massachusetts, 322; *Drury* v. *Moores*, 50 N. E. Rep. 618.

The Trust Company had no equitable lien upon the leather enforceable against a trustee in bankruptcy. *Yenni* v. *McNamee*, 48 N. Y. 614; *Adams* v. *Bank*, 2 Fed. Rep. 174; *Dry Dock Company* v. *Foster*, 48 Illinois, 507; *Casey* v. *Cavaroc*, 96 U. S. 467; *Matthews* v. *Hardt*, 79 App. Div. (N. Y.) 570; Hurd's Ill. Rev. Stat., Cap. 95, 1270; Bankruptcy Act, §§ 67, 70; *Hooven* v. *Burdette*, 153 Illinois, 672; *Gilbert* v. *Nat. Cash Register Co.*, 174 Illinois, 288; *Chesapeake Shoe Co.* v. *Seldner*, 122 Fed. Rep. 593; *Re Pekin Plow Co.*, 112 Fed. Rep. 308; *Re Thorp*, 130 Fed. Rep. 371; *Tatman* v. *Humphrey*, 184 Massachusetts, 361; *Re Carpenter*, 125 Fed. Rep. 831; *Re Butterwick*, 131 Fed. Rep. 371; *Canadian Bank of Commerce* v. *McCrea*, 106 Illinois, 381.

MR. JUSTICE HOLMES delivered the opinion of the court.

The questions certified by the Circuit Court of Appeals arise upon the following facts, abridged from the statement submitted to us. The bankrupt, Flanders, was a wholesale leather dealer. He walled off a part of the basement of his place of business, and let it at a nominal rent to the Security Warehousing Company. There were doors to this part, with padlocks bearing the name of the company, which were kept locked and to which the company had the only keys. The company had a key to Flanders' front door and access to the part let to it, at all hours of day or night. No one else could get such access without breaking in. There were two signs on the outside, stating in large letters that the premises were occupied by the company as a public warehouseman. The company received leather from Flanders into this place, issuing

a certificate that it had received the same on storage subject to the order of H. L. Flanders & Co., and identifying the leather; "said commodity to be retained on storage and delivered only upon surrender of this receipt properly endorsed and payment of all charges thereon." To every parcel of the leather was attached a card legibly stating that it was in the possession of the Warehouse Company. The company stipulated in the receipt against liability for damage by fire, water, etc., and by a general contract with Flanders the latter assumed all risk of loss except from dishonesty of the company's servants. Flanders paid the company twenty dollars a month for the first $10,000 worth of property or less, and a dollar a month for each additional $1,000. He also paid the expenses of the company in connection with storing the goods. The certificates of the company issued as above were all endorsed by Flanders to the Union Trust Company as security for loans made by it to him in the regular course of business. If Flanders desired to remove any part of the leather he paid the necessary sum to the Trust Company, was entrusted with the receipts, got the Warehouse Company to send a man to unlock the place of enclosure and allow the removal, endorsing on the receipt the amount delivered if less than all, and then, as the case might be, returned the receipt to the Trust Company or surrendered it into the Warehousing Company's hands.

Flanders became bankrupt and his trustee filed a bill in the District Court, alleging the storage arrangement to have been fraudulent, and claiming the leather on the ground that it always had been in the possession of Flanders, and therefore had come to the possession of the trustee. Upon these facts the Circuit Court of Appeals certifies the following questions:

"1. Whether, upon the facts above recited, the receipts issued by the warehousing company are to be deemed valid warehouse receipts, so that their endorsement by Flanders to the trust company, as security for loans, constituted a pledge or pledges to the trust company of the leather covered by such receipts, which would be valid against attaching creditors.

"2. Whether, if the receipts are not to be deemed valid as *warehouse receipts,* upon the facts above recited, the transactions are to be regarded as constituting pledges of such leather by Flanders to the trust company, which would be valid as against attaching creditors.

"3. If there was no pledge, whether the trust company, under the facts above recited, acquired an equitable lien upon such leather that is superior to the title thereto of the trustee in bankruptcy."

No question under the statutes of Illinois is suggested. Apart from statute a warehouse receipt simply imports that the goods are in the hands of a certain kind of bailee. A bailee asserting a lien for charges has the technical possession of the goods. But it always is recognized that if the bailee of the owner, by direction of the latter, assents to becoming bailee for another to whom the owner has sold, mortgaged or pledged the goods, the change in the character of the bailee's holding satisfies the requirement of a change of possession to validate the sale or pledge. Therefore it is common for certain classes of bailees to give receipts to the order of the bailor, because by a receipt in that form the bailee assents in advance to becoming bailee for any one who is brought within the terms of the receipt by an endorsement of the same. That, at least, is the argument of Benjamin on Sales, 2d ed., 676 *et seq.*, 6th Am. ed., 795, § 817, is the understanding of merchants, and is the principle adopted as to public warehouse receipts by the statutes of Illinois, Rev. Stat., c. 114, § 24, and probably adopted by the courts, apart from statute. *Union Trust Co.* v. *Trumbull,* 137 Illinois, 146, 173; *Northrop* v. *First Nat. Bank of Chicago,* 27 Ill. App. 527; *Millhiser Manuf. Co.* v. *Gallego Mills Co.,* 101 Virginia, 579, 589; *Hallgarten* v. *Oldham,* 135 Massachusetts, 1, 10. The transfer of the receipt is not a symbolical delivery; it is a real delivery to the same extent as if the goods had been transported to another warehouse named by the pledgee.

If then the Security Warehousing Company had possession

of the goods, it had it as bailee, and, unless some reason appears to the contrary, the endorsement of its receipt, the same being drawn to Flanders' order, was a delivery sufficient to validate the pledge.   But there can be no doubt on the facts as stated, without more, that the company had possession of the goods.   It had them under lock and key in a place to which it had a legal title and right of access by lease.   Even if it had not had a right of access to the place it would have had possession of the contents of the room, according to the analogy of the settled law that a carrier who breaks bulk and takes the goods is guilty of larceny.   Y. B. 13 Ed. IV. 9, pl. 5.   The act is a trespass as agreed in Keilway, 160, pl. 2.   *Ward* v. *Turner,* 1 Dick. 170, 172; *S. C.,* 2 Ves. Sr. 431, 443; *Moore* v. *Mansfield,* 182 Massachusetts, 302, 303.   So, again, if the goods had been in a place under the exclusive control of the company, even without the company's knowledge they would have been in the company's possession.   *Elwes* v. *Brigg Gas Co.,* 33 Ch. D. 562, 568; *Reg.* v. *Rowe,* Bell, C. C. 93.   See *Barker* v. *Bates,* 13 Pick. 255, 257, 261; *Northern Pacific Railroad* v. *Lewis,* 162 U. S. 366, 378, 379, 382.   When there is conscious control, the intent to exclude and the exclusion of others, with access to the place of custody as of right, there are all the elements of possession in the fullest sense.   *Gough* v. *Everard,* 2 H. & C. 1, 8; *Ancona* v. *Rogers,* 1 Ex. Div. 285.

We deal with the case before us only.   No doubt there are other cases in which the exclusive power of the so-called bailee gradually tapers away until we reach those in which the courts have held as matter of law that there was no adequate bailment.   *Bank* v. *Jagode,* 186 Pa. St. 556; *Drury* v. *Moors,* 171 Massachusetts, 252.   So, different views have been entertained where the owner has undertaken to constitute himself a bailee by issuing a receipt.   We may concede, for purposes of argument, that all the forms gone through in this case might be emptied of significance by a different understanding between the parties, which the form was intended to disguise.   But no such understanding is stated here, and it cannot be assumed.

There is no reason even to infer it as a conclusion of fact, if such inferences were open to us to draw. It is true that the evident motive of Flanders was to get his goods represented by a document for convenience of pledging rather than to get them stored, and the method and amount of compensation show it. But that was a lawful motive and did not invalidate his acts if otherwise sufficient. He could get the goods by producing the receipt and paying charges, of course, but there is no hint that the company did not insist upon its control. It is suggested that the goods gave credit to the owner. But, in answer to this, it is enough to say that the goods were not visible to any one entering the shop. They could be surmised only by going to the basement, where signs gave notice of the company's possession, and probably could be seen only if the company unlocked the doors. There is nothing stated which warrants us in doubting that all the transactions were in good faith.

Although the first question does not refer in terms to the statutes of Illinois it is proper to add that we see no sufficient reason for denying to the place of storage the character of a public warehouse. "Public warehouses of Class C shall embrace all other warehouses or places where property of any kind is stored for a consideration." Rev. Stat. c. 114, § 2. These sweeping words embrace any place so used, whether owned or hired by the warehousemen, and, if so, they embrace as well a place hired of the owner of the goods as one hired of anybody else. See *Sumner* v. *Hamlet*, 12 Pick. 76; *Gough* v. *Everard*, 2 H. & C. 1. If we are right in this, then the endorsement of the receipts transferred the property in the leather by the express terms of the statute already referred to. Rev. Stat., c. 114, § 24. If not, we should come to the same result by the common law, for even if we did not adopt the argument of Mr. Benjamin to which we have referred above, against the earlier view of Blackburn on Sales, 297, followed in *Farina* v. *Home*, 16 M. & W. 119, still all the authorities agree that, if an assent in advance is not enough, yet as soon as the bailee

attorns to the assignee the delivery is complete. The statement has not this point in view. But we should suppose that a fuller statement would make it plain that the Warehouse Company knew and assented to the transfers to the Trust Company, if that be material, which we do not imply. See also *Union Trust Co.* v. *Trumbull,* 137 Illinois, 146, 173; *Millhiser Manuf. Co.* v. *Gallego Mills Co.,* 101 Virginia, 579, 589; *Gibson* v. *Stevens,* 8 How. 384, 399.

As we answer the first and second questions in the affirmative, it is unnecessary to consider the third.

*It will be so certified.*

Mr. Justice Harlan, Mr. Justice Brewer and Mr. Justice Day dissent.