### CORNELIUS v. C. C. PICTURES, Inc.

(Circuit Court of Appeals, Second Circuit. January 5, 1925.)

No. 229.

1. **Courts ⟨⟩363, 366(18)—Federal court determining validity of chattel mortgage held bound by statute and decisions of state wherein transaction took place.**

Federal court, determining validity of chattel mortgage, transactions concerning which took place in New York, *held* obliged to follow Lien Law N. Y. § 230, and decisions of New York courts.

2. **Chattel mortgages ⟨⟩191—"Actual and continued change of possession" not accomplished, where chattels remain in possession of tenant or successor in title.**

Under Lien Law N. Y. § 230, declaring unrecorded chattel mortgages invalid unless accompanied by immediate delivery and change of possession, where third person, in whose physical possession mortgaged chattels remain, is tenant of mortgagor or his successor in title, there is not an actual and continued change in possession.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Actual and Continued Change of Possession.]

3. **Chattel mortgages ⟨⟩191—Actual and continued change of possession of mortgaged chattels validating unrecorded mortgage held established.**

Where firm with which cinema films were stored was notified of mortgage and told to make prints only on mortgagee's orders, and indorsed on its records a notation to that effect, *held*, that there was an actual and continued change of possession within Lien Law N. Y. § 230, sufficient to validate mortgage though not recorded.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Harold A. Cornelius against C. C. Pictures, Inc., wherein Jacob Wener intervened, claiming chattel mortgage lien on certain cinema negatives. From an order sustaining the validity of intervener's mortgage,

Harold Harper and another, receivers, appeal. Affirmed.

See, also, 296 F. 487, 296 F. 490, 297 F. 444.

This case was here before in 297 F. 444. We there affirmed an order denying the motion of Wener to sell certain property said to be in the possession of the receivers appointed under this creditor's bill. Under the mandate thereafter issued, Wener, however, was permitted to take evidence in support of his petition in order to show if he could that he held an enforceable mortgage given by the defendant herein and covering a large quantity of cinema negatives.

This he proceeded to do, and showed (what had not been proven when the case was here before) that defendant company owned said cinema negatives, which were stored with a concern doing an independent business, i. e., the Evans Company. This storage was necessary because such negatives are highly inflammable, and Evans Company had lawful conveniences for storing them, which the defendant herein had not.

Furthermore it was the business of Evans Company to make prints from these negatives, and it had apparently done so, upon orders given by defendant herein, and received pay for so doing. A formal instrument of mortgage was executed by defendant and delivered to Wener. A copy of said mortgage was filed with Evans Company, and that concern was fully advised of the transaction between Wener and defendant, and informed that thereafter no prints should be made by it from the negatives except as ordered and to the extent of order by Wener.

Thereupon Evans Company entered in its own records the fact that these negatives were "to be released on order of J. Wener only."

But Wener never filed for record his aforesaid mortgage.

On these facts the court below held that under section 230 of the New York Lien Law (Consol. Laws N. Y. c. 33) the hypothecation to Wener was a mortgage of goods and chattels, and that it had been accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged, i. e., the negatives aforesaid.

Wener's mortgage was therefore upheld as against the receivers in equity and they took this appeal.

Mark Eisner, of New York City (Irwin M. Berliner, of New York City, of counsel), for Wener.

Wing & Russell, of New York City (Burt D. Whedon, of New York City, of counsel), for receivers.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge. The question at bar is whether, considering that the mortgaged chattels were at the time of mortgage given, and thereafter continued, in the physical possession of a third person, the facts proven constitute or are equivalent to that immediate delivery and actual and continued change of possession required by the law of New York.

[1] Since all the transactions took place in that state, it is admitted that we are obliged to follow the New York law if the rule thereof can be discovered from the decisions of the state's highest court; and further it is admitted that any rule must be evolved from the statute which is at present section 230 of the Lien Law.

Statutes, like men, have a life story, and their significance may sometimes be ascertained by a study of heredity.

One of the most important ancestors, if not the immediate progenitor of the present Lien Law, is 2 R. S. 136, § 5, of which the words now material read as follows: "Every assignment of * * * chattels, by way of mortgage * * * unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession, of the things * * * mortgaged, * * * shall be presumed to be * * * void, as against the creditors of the * * * person making such assignment."

This statute in respect of chattel mortgages was supplemented by chapter 279 of 1833, but was not repealed nor (so far as the language above quoted is concerned) changed. See Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073.

While the law stood thus, Nelson, C. J., held that "as the property mortgaged was not left in the possession of the mortgagors, but remained with a third person, * * * the case did not fall within the statute, 2 R. S. 136, § 5, and nothing short of actual fraud could invalidate it." Nash v. Ely, 19 Wend (N. Y.) 523.

And this interpretation of the statute was followed in Goodwin v. Kelly, 42 Barb. (N. Y.) 194; Smith v. Post, 1 Hun (N. Y.) 516; National, etc., Bank v. Chaskin, 28 App. Div. 311, 51 N. Y. S. 64.

In Beskin v. Feigenspan, 32 App. Div. 29, 52 N. Y. S. 750, the opinion was expressed

that Judge Nelson's holding was either no longer "in point on the question of change of possession" or "must be considered as overruled by the later cases." But we are unable to discover that any later decisions by the highest court of the state have impaired the value of Judge Nelson's interpretation of the statute so far as the present point is concerned.

[2] It is we think true that the New York law is at present clear to the effect that where the third person in whose physical possession the mortgaged chattels remain is a tenant of the mortgagor or his successor in title, there is not and cannot be an actual and continued change of possession within the meaning of the statute. Beskin v. Feigenspan, supra; Wild v. Porter, 59 App. Div. 350, 69 N. Y. S. 839, affirmed 173 N. Y. 614, 66 N. E. 1118. With the reason for this rule we are not concerned, though it seems to us fundamentally to rest on some idea that a tenant is a species of representative if not an agent of the landlord—a concept that will not bear much discussion under the law of tenures.

It may be granted that in New York no method yet discovered of making the mortgagor the agent or representative of the mortgagee will suffice under the statute. Steele v. Benham, 84 N. Y. 634, and cases cited.

It is also clear that the possession of the mortgagee must be "to the exclusion" of the mortgagor, and this may be a question of fact. Hall v. Sweet, 40 N. Y. 98; Siedenbach v. Riley, 111 N. Y. 567, 19 N. E. 275.

But where the facts are so plain that no jury question can arise, and the third person is neither a tenant nor an agent of the mortgagor, we discover in the local cases no general principle opposed to the interpretation of language very like that of Lien Law 230, as laid down by Nelson, C. J., supra.

Thus it is said arguendo in Wild v. Porter, supra: "Mere words and inspection cannot effect a change of possession. There must be an actual possession by the mortgagee; a possession in fact." And in Steele v. Benham, supra, quoting from Camp v. Camp, 2 Hill (N. Y.) 628, it is said: "Actual change of possession imports at least something more than a mere legal or fictitious change, to be worked by the operation of the mortgage itself."

[3] We feel justified in saying that the facts before us present a problem quite different from any considered by the New York courts. Let it be admitted that actual possession means more than a paper transfer, something more than an effect produced by the mortgage instrument itself. But with these assumptions the question is pertinent: What can a mortgagee do when the chattels mortgaged to him are in the possession of a third person who is neither the agent nor tenant of the mortgagor, more than to make that third person his bailee as he had been the bailee of the mortgagor? Short of choosing another bailee, often at very material expense, no other method of effecting an actual and continued change of possession occurs to us, nor has any other method been suggested in argument.

No New York decision being produced specifically applicable to this situation, we feel justified in turning to general interpretation of similar laws (and statutes more or less like the New York Lien Law are common enough) for enlightenment.

The language of Holmes, J., in Union Trust Co. v. Wilson, 198 U. S. 530, 536, 25 S. Ct. 766, 767 (49 L. Ed. 1154), is directly applicable. That learned judge remarks: "It always is recognized that if the bailee of the owner, by direction of the latter, assents to becoming bailee for another to whom the owner has sold, mortgaged or pledged the goods, the change in the character of the bailee's holding satisfies the requirement of a change of possession to validate the sale or pledge." This it seems to us is the real test, viz.: Was there a change in the character of the bailee's holding?

In this instance there assuredly was, for on the records of the Evans Company, which in the view most favorable to the appellants was no more than the mortgagor's bailee, absolute dominion over these cinema negatives passed to Wener, in that Wener alone was recognized by Evans Company as having authority to release the films producible from the negatives. The text-writers unanimously recognize similar doctrine, which is summed up in 11 C. J. 585, declaring in substance that the rule as enunciated by Holmes, J., supra, "is applied by the weight of authority to cases where the property is in the possession of a bailee of the mortgagor." The citations for this pronouncement are extended and sufficient, and the only New York case cited—and that contra—is Beskin v. Feigenspan, supra, which, as above pointed out, goes entirely upon what is apparently the New York concept of tenancy and has no relation to a case of bailment where the bailee contemporaneously with the execution of the mortgage "attorns" (as the phrase is) to the mortgagee.

We conclude that, there being no controlling decision in the highest court of the state

of New York on this particular point, the general law should be followed, and that law leads to an affirmance of the order below.

Affirmed, with costs.