GRAHAM, Judge,
delivered the opinion of the court:
The claim in this case grows out of an informal contract, dated April 17, 1918, between the Government and the Edison Phonograph Works, which was merged with plaintiff in 1924. The Edison Phonograph Works presented its claim to the Secretary of War under the Dent Act of March 2, 1919. The claim was approved by the Board of Contract Adjustment and the Secretary of War, and a voucher for $1,761.72 was issued, but payment as to part of the award was stopped by the comptroller, his action being based upon the ground that under a previous contract Edison Phonograph Works was indebted to the Government in the sum of *194 $1,403.23, and he ordered that the voucher issued by the War Department to the Edison Phonograph Works be reduced to cover said indebtedness. The Edison Phonograph Works refused to accept the diiference between the two sums mentioned and brought suit in this court.
This being an informal contract, it falls within the Dent Act. There is no question here as to there being a contract in fact and that the parties making the contract had authority to do so. The Dent Act gave the Secretary of War authority to settle the claim, and his decision is conclusive upon this court as to the rights of the plaintiff under that contract.
The counterclaim presented by the Government grows out of a contract entered into three months after the contract involving plaintiff’s claim. Under that contract Edison Phonograph Works undertook to manufacture certain articles out of material furnished by the Government, and before the completion of the work the contract was terminated by the Secretary of War. Thereafter the parties entered into a settlement contract, which stated that it superseded the original contract and settled all matters arising thereunder. Among certain material in the possession of Edison Phonograph Works, which it was agreed in the settlement contract was the property of the Government, was a quantity of brass. This material was inventoried by a representative of the Government and the Edison Phonograph Works, its weight fixed at 7,138 pounds, and left in the possession of the said company. The latter having limited facilities for storage, and having made several attempts, without success, to have the Government remove its property or give some direction for disposition of it, going so far as to send a representative to Washington, it on March 25, 1919, stored the brass in a public warehouse of good reputation, taking the precaution to have the brass weighed on delivery thereto. The weight on delivery to the warehouse was found to be 7,243 pounds, about 100 pounds more than shown by the inventory referred to above. Having stored the brass, it took the warehouseman’s receipt for the amount of brass shown by the weight at the warehouse.
The storage took place in March, 1919. In October the Government wrote to Edison Phonograph Works asking that *195 it deliver to defendant’s representative, who presented the letter, all warehouse receipts covering Government material in storage at said warehouse. This was done by the Edison Phonograph Works and the Government’s receipt taken therefor. The defendant made no examination at the warehouse at the time to ascertain whether all its material was there, apparently being satisfied with the reputable character of the warehouse and possession of the receipts; nor did it make any examination for more than a year afterwards, when it went to the warehouse to remove the material and received only 1,451 pounds of brass. The balance of the brass was unaccounted for except by-the statement of the warehouseman that it must have been stolen.
It is not disputed that the Edison Phonograph Works exercised due care in the selection of the warehouse, as much care as it would have exercised in connection with its own property. The Government knew of the storage of the material. It demanded and accepted the warehouse receipts from the said company without making an examination of the material, and failed to make such an examination for more than a year.
“ The transfer of the receipt is not a symbolical delivery; it is a real delivery to the same extent as if the goods had been transferred to another warehouse named by the pledge.” Union Trust Co. v. Wilson, 198 U. S. 530, 536.
See also Insurance Co. v. Kiger, 103 U. S. 352, 356, and Gibson v. Stevens, 8 How. 384, 399.
Therefore the delivery of the warehouse receipts was delivery of the property. Thereafter the Edison Phonograph Works was relieved of all obligation to care for the property, and could have exercised no legal rights in regard to its possession or protection. By accepting the receipts the defendant confirmed the action of the Edison Phonograph Works in placing the goods in the warehouse.
The warehouse receipts were transferred to defendant in October, 1919. The shortage was discovered in December, 1920. In December, 1919, there was a settlement between the Government and the Edison Phonograph Works of all matters involved in the contract of July 6, 1918, the latter *196 being credited with $1,403.23 for storage charges paid by it to McGann. Warehouse from March, 1919, to date of delivery of the receipts to the Government. Under this settlement a balance of $8,442.57 was shown to be due from the Edison Phonograph Works to the defendant, which was afterwards paid. Thus the defendant further confirmed the action of the Edison Phonograph Works in storing the material by crediting it with storage charges on the brass, and at the same time entering into a final settlement with it as to all matters growing out of the contract of July 6, 1918.
The defendant can'not go behind this settlement and is debarred thereby from asserting the claim for shortage in brass. The settlement contract was based upon the findings and award of the New York District Claims Board, and contained a provision that the settlement contract canceled and superseded the original contract. It is significant that the award of the New York District Claims Board contained the following provisions:
“ There are no known claims of the United States against the contractor arising out of or incident to the original contract which are not covered in reaching the foregoing determination.
$ $ $ $ $
«* * * sucp settlefment shall Constitute a complete determination of every question or claim, legal or equitable, liquidated or unliquidated, pertaining to or' growing out of said contract.”
The 'settlement contract contains a release and acquittance upon the part of the Edison Phonograph Works, and, as stated, the said company paid the amount due from it thereunder. It was the duty of the defendant to examine the goods in the warehouse before it entered into the final settlement.
It is contended that, granting that the delivery of the warehouse receipts relieved the Edison Phonograph Works from responsibility for the property thereafter, it did not relieve it from responsibility between the date of storage and the date of delivery of the receipts. In answer it may be said that it appears that the Edison Phonograph Works *197 was justified in placing the material in the warehouse, and, as already stated, in doing so it exercised the same care it would have exercised in the storage of its own property. It may also be stated that the Government at some time prior to the delivery of the receipts — it does not appear when — knew that the goods were in storage and could have secured possession of the property at any time, whether in storage or not. Aside from these considerations, it appeal’s that more than the amount of brass shown by the inventory was delivered to the warehouseman; and being intact and in amount when so delivered, a state of things is shown to have existed, and the law presumes that state of things to continue to exist until the contrary is shown or a different presumption is raised. Greenleaf on Evidence, 13 ed., vol. 1, p. 50, sec. 41; 22 Amer. & Eng. Encyc. of Law, 1238; Inhabitants of Hingham v. Inhabitants of South Scituate, 7 Gray (Mass.) 232.
The claim of offset can not be sustained and must be rejected. The plaintiff is entitled to recover the amount claimed in its petition, and it is so ordered.
Moss, Judgey Booth, Judge; and Campbell, Chief Justice, concur.