## NATHANSON v. WORCESTER BANK & TRUST CO.
### No. 2951.

Circuit Court of Appeals, First Circuit.
Dec. 1, 1934.

William M. Silverman, of Boston, Mass. (Harry Olins and Hermanson & Silverman, all of Boston, Mass., on the brief), for appellant.

Ralph E. Tibbetts, of Boston, Mass., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal from an order or decree of the District Court for Massachusetts of April 5, 1934, on a petition filed with the referee in bankruptcy June 22, 1933, by the Worcester Bank & Trust Company, executor of the will of Frank S. Ewing, against Edward A. Nathanson, trustee of the estate of John J. Kingsley, Inc., bankrupt, to reclaim certain jewelry in the possession of the trustee.

The referee denied the petition. The executor petitioned for a review. The referee filed a certificate of review and, after hearing, the District Court entered an order or decree vacating the order of the referee and allowing the petition, from which the trustee has appealed.

This being an appeal from an order made in a controversy in bankruptcy, under section 24a, Bankr. Act (11 USCA § 47 (a), the case is here open for review both as to law and facts as fully as in an ordinary equity appeal. Flanders Motor Co. v. Reed (C. C. A.) 220 F. 642, 643.

John J. Kingsley, Inc., was a Massachusetts corporation engaged in the jewelry business in Boston. John J. Kingsley was its treasurer and owned its stock. He was a well-known jeweler and a friend of Frank S. Ewing, both of whom are dead. In May, 1927, the entire stock of jewelry belonging to one Carl H. Skinner, a Boston jeweler, was offered for sale by his assignee. Kingsley persuaded Ewing to advance the money (about $200,000) with which to purchase the Skinner stock. On May 10, 1927, Kingsley purchased the stock with the money advanced by Ewing and took delivery. An agreement in writing was entered into on the same day (May 10, 1927), signed by Frank S. Ewing and John J. Kingsley, Inc., by its treasurer John J. Kingsley, in which, after making certain recitals, the terms and conditions under which the jewelry was to be disposed of were stated. After stating the date and naming the contracting parties, the agreement provided:

"That whereas on May 10, 1927, one Robert A. B. Cook as the sole surviving or remaining assignee or trustee under a common law assignment made to him by one Carl H. Skinner, did execute a bill of sale to one John J. Kingsley of said Boston, and

"Whereas said Cook in such capacity conveyed to the said Kingsley all the right, title and interest of Carl H. Skinner and of the said Robert A. B. Cook as assignee, in and to all the stock of merchandise contained in the premises at 300 Boylston Street, Boston, Massachusetts, and

"Whereas the said John J. Kingsley assigned all his right, title and interest in and to said bill of sale to the said Frank S. Ewing;

"Now therefore, by this agreement made in consideration of the premises and of the

mutual covenants herein contained, the parties hereto agree as follows:

"1. The said Frank S. Ewing, has delivered and by this instrument does deliver all of the aforesaid merchandise to the said John J. Kingsley, Inc., the said corporation acknowledging the receipt of said property.

"2. The said John J. Kingsley, Inc., agrees to place said merchandise on sale for a price in excess of the amount reflected by the schedule, to which this agreement is affixed, and upon each page of said schedule the initials of both parties hereto appear, said schedule consisting of 25 pages, that for the purposes of this agreement, the sum so placed opposite the article in said schedule is to represent the cost of said article.

"3. The amount received for said article in excess of the figure as reflected in said schedule, is to be divided equally between the parties hereto.

"4. On the first day of each month hereafter the said John J. Kingsley, Inc., agrees to pay the said Ewing such sum as may be due him in accordance with this agreement.

"5. The said John J. Kingsley, Inc., agrees to pay, to the said Frank S. Ewing, in addition to the foregoing monthly payments, on the first day of each month, for the merchandise sold the preceding month upon the basis of the price as reflected by the schedule hereinbefore referred to.

"6. The accounts receivable are to be treated upon the same basis as the merchandise; the furniture and fixture account in a like manner.

"7. It is expressly agreed between the parties hereto that nothing herein shall be construed as constituting or creating a partnership between them.

"In Witness Whereof, etc."

The circumstances under which the jewelry came into the possession of Kingsley, Inc., the bankrupt, are hereafter stated. It was tagged so that it could be distinguished from the regular stock of the bankrupt.

Kingsley, Inc., sold a good deal of the jewelry under and "in accordance with the agreement" before it was taken over by the trustee, but "a considerable portion was on hand when the bankrupt failed," which came into the trustee's possession.

In passing upon the question whether Kingsley had assigned to Ewing all his right, title, and interest in and to the Skinner bill of sale, the referee indicates in his report that there was no proof before him of such an assignment. He had no difficulty in regarding the recital in the contract—that the assignee of Skinner had executed a bill of sale to Kingsley—as evidence of that fact, which he found to be true. And the recital in the contract that Kingsley had assigned all his right, title, and interest in and to said bill of sale to Ewing was equally persuasive evidence that such an assignment had been made, and we find it to be true. He, however, states that there was a controversy in regard to the matter in the probate court, and that the conclusion there reached was that Kingsley had transferred all his right, title, and interest to Ewing, and that that was undoubtedly a just conclusion; and later in his report he treats this as established. Although it was expressly stipulated in the agreement of May 10, 1927, that "the said Frank S. Ewing has delivered and by this instrument does deliver all of the aforesaid merchandise to the said John J. Kingsley, Inc., the said corporation acknowledging the receipt of said property," the referee finds that Ewing never got possession and never made delivery to Kingsley, Inc. By this he undoubtedly means no more than that Ewing never manually received delivery from Kingsley nor manually made delivery to Kingsley, Inc.

The Skinner stock, which the contract shows was delivered to Kingsley, Inc., on May 10, 1927, must, so far as the evidence discloses, have been delivered to that corporation by Kingsley, either of his own motion or at the instance and direction of Ewing. If it was done at the instance and direction of Ewing, the owner, then Kingsley made the delivery as the agent of Ewing and his possession was that of Ewing. If it was delivered by Kingsley to the corporation of his own motion, the corporation, in the agreement of May 10, 1927, recognized Ewing as the owner and received and held the property as that of Ewing and its possession was his possession, so that in either case the title passed to Ewing. It never passed to Kingsley, Inc.

In July, 1928, Kingsley purchased another stock of jewelry of Fred E. Chick, Inc., with money advanced by Ewing. This purchase was put through in exactly the same way that the Skinner purchase was. And an agreement in writing covering the transaction was made on July 27, 1928, to which John J. Kingsley, John J. Kingsley, Inc., and Ewing were parties. The only difference between this agreement and the one of May 10, 1927, aside from the fact that Kingsley as well as Ewing and Kingsley, Inc., were

parties to it and the omission therefrom of paragraph 6 in the May 10 agreement, was that the agreement also contained a bill of sale from Kingsley to Ewing of the merchandise so purchased and not a mere recital. This provision of the agreement reads as follows: "The said John J. Kingsley, for and in consideration of One Dollar and other valuable considerations, does hereby grant, sell, transfer and deliver unto the said Frank S. Ewing all the merchandise so purchased by him, to have and to hold all and singular the said goods and chattels to the said Frank S. Ewing and his successors, executors, administrators, and assigns to their own use and behoof forever."

The facts in relation to the delivery of this stock, the sale of a part thereof "in accordance with the agreement," and the balance being taken over by the trustee when the bankrupt failed, are the same as the facts relating to the stock purchased from the assignee of Skinner.

While the referee was of the opinion that, as between Ewing, Kingsley, and Kingsley, Inc., Ewing should prevail, yet, bankruptcy having intervened, he concluded that Ewing "must establish himself as a bona fide consignor who had title to the goods consigned, or he must rely upon some kind of an equitable lien"; that no assignments of the bills of sale by Kingsley to Ewing were "sufficient to convey the title to Ewing without a delivery"; and that all that Ewing got was "a bill of sale by way of security" which he neglected to record and therefore was void; and that, if Ewing had an equitable lien on the goods, he neglected to reduce his right to a legal one by taking possession of the property prior to the bankruptcy.

When the case came before the District Court (8 F. Supp. 303, 304) it set aside the order of the referee denying the petition, stating as its reason: "It is a well-settled rule of law, in this commonwealth and elsewhere, that an instrument of transfer accompanied by delivery to a third party, or an attornment by the party in possession, is sufficient to complete a transfer of the title, good as against the creditors of the vendor"—citing Mass. G. L. (Ter. Ed.) c. 106, § 21 rule 4 (2) and § 32 (3).

Section 32 (3) provides: "If the goods at the time of sale are in the possession of a third person, the seller does not fulfil his obligation to deliver to the buyer unless and until such third person acknowledges to the buyer that he holds the goods on the buyer's behalf; but as against all others than the seller the buyer shall be regarded as having received delivery from the time when such third person first has notice of the sale."

Under these provisions of the statute, if the goods at the time of the assignments by Kingsley to Ewing were in the possession of Kingsley, Inc., then, as against Kingsley, his legal obligation to deliver them to Ewing was fulfilled and the title passed to Ewing the moment Kingsley, Inc., acknowledged in its agreements of May 10, 1927, and July 27, 1928, that it held the goods for Ewing; and, as against all others than Kingsley, when Kingsley, Inc., had notice of the assignments by Kingsley to Ewing, which it had in each case on the day it entered into the agreements of consignment for sale. The court also cited the case of Union Trust Co. v. Wilson, 198 U. S. 530, 536, 538, 25 S. Ct. 766, 49 L. Ed. 1154. At the bottom of 538 of 198 U. S., 25 S. Ct. 766, 768, it is said: "All the authorities agree that, if an assent in advance is not enough, yet, as soon as the bailee attorns to the assignee, the delivery is complete." And by this is meant that the title passes, not only as against the seller or assignor, but all the world. See, also, Corning v. Records, 69 N. H. 390, 392, 393, 46 A. 462, 76 Am. St. Rep. 178.

On the facts in this case there can be no doubt, both under the statute of Massachusetts and the general law, that the title to the respective properties passed to Ewing not later than May 10, 1927, and July 27, 1928, when Kingsley, Inc., attorned to Ewing.

The contracts between Ewing and Kingsley, Inc., were contracts of consignment of goods for sale and not contracts of sale, and Ewing did not preclude himself or his executor from asserting his right to the property by permitting the goods to be displayed for sale and sold for his account. By the terms of the contracts, Kingsley, Inc., was bound to account for every dollar it received for the goods sold (which it is found that it did) and was entitled to retain therefrom as compensation for its services one-half of the profit over and above the cost price set against each article in the schedules made of them, as provided in the agreements, and upon which "the initials of both parties [Ewing and Kingsley, Inc.] hereto appear."

There is no finding that any creditor of Kingsley, Inc., was misled into believing that the property in question was owned by it, and it is reasonably certain that none of its creditors could have been misled as to the ownership of the property by the advertisements

made of it in the newspapers, which Kingsley, the individual, caused to be published, setting out that he had purchased it and was offering it for sale. All that the creditors of Kingsley, Inc., or the public could gather from those advertisements was that Kingsley individually had purchased the stocks of Skinner and Chick, was the owner, and was offering them for sale. They surely would have no right to understand therefrom that Kingsley, Inc., was the owner. The question of estoppel was adequately treated by the District Court in its opinion, and we refrain from commenting on it further.

The order or decree of the District Court is affirmed, with costs in this court to the appellee.