## SIMPSON & DOELLER CO. v. SEARS & NICHOLS CORPORATION et al.

### No. 844.

District Court, S. D. Ohio, E. D.

Nov. 5, 1938.

Bulkley, Hauxhrust, Jamison & Sharp, of Cleveland, Ohio, for Simpson & Doeller Co.

R. M. Noll and E. F. Folger, both of Marietta, Ohio, for First Nat. Bank of Marietta and Guardian Trust Co. of Cleveland.

Henderson, Quail, McGraw & Barkley, of Cleveland, Ohio for Guardian Trust Co.

Wilson & Rector, of Columbus, Ohio, for Cleveland Trust Co.

John W. Bricker, Atty. Gen. of Ohio, for I. J. Fulton, Superintendent of Banks of Ohio.

UNDERWOOD, District Judge.

This litigation grew out of an equity receivership, and was originally tried be-

fore the late Judge BENSON W. HOUGH, who died before rendering a final decision. Thereafter, the parties stipulated and agreed: That the case be submitted to the present Judge upon the depositions, oral evidence and exhibits theretofore introduced; that oral arguments, including statements of claims, the evidence, and the law be made to the Court; and that consideration be upon the briefs theretofore filed, with permission to the parties to file supplemental briefs if so desired.

Arguments were heard, additional briefs were filed, and the case submitted upon the record in its then present form.

On January 13, 1931, the Sears & Nichols Corporation became involved in litigation instituted by the Simpson & Doeller Company. On that date, with the consent of all interested parties, Stacey A. Mitchell was appointed Receiver of the Sears & Nichols Corporation. When the appointment was made, it was the intention of all parties involved, that the business of the defendant would be continued as a going concern. However, the Receiver was unable to secure financial support and recommended to the Court that the properties be sold as a whole. A sale was made on March 16, 1931 to the Yedal Canning Company, the consideration therefor being $25,000 and assumption by the purchaser of the obligations under the First Mortgage fifteen year gold bonds of the Sears & Nichols Corporation. All the assets of the Defendant Corporation, including the merchandise in possession of the Cleveland Storage Company were sold. The purchaser, buying the latter merchandise subject to the claims and liens of the Cleveland Storage Company and those of the holders of the warehouse receipts issued against such merchandise. Thereafter, on March 25, 1931, a hearing was had before the late Judge HOUGH, on an application to confirm the sale. The hearing was continued to April 10, 1931, and was then decided. During the course of the proceedings it became apparent that insufficient funds were realized from the sale of the property to pay the bondholders and general creditors. However, the sale was confirmed, subject to the right of the Guardian Trust Company and Tod F. Buzard, Trustees of the issue of First Mortgage 6%, fifteen year Gold Bonds of the Sears & Nichols Corporation; and of the Cleveland Trust Company, Trustee of the Income Debenture Bonds of the Sears & Nichols Corporation, to file their intervening petitions setting up their respective claims. The intervening petition of the Guardian Trust Company was filed forthwith, praying that the Deeds of Trust and Supplemental Deeds of Trust theretofore executed to secure the First Mortgage, 6% 15 year Gold Bonds, be determined to be the first and best lien upon the property therein described, and for further equitable relief. The intervening petition of the Cleveland Trust Company was also filed forthwith, praying that the decree and order of sale be rescinded and set aside, and that the various questions raised by its intervening petition be heard and determined before any final disposition should be made of the property of the Sears & Nichols Corporation then in possession of the Receiver.

Following the filing of the intervening petitions, supplemental bills of intervention were filed. The parties having answered, the issues were made up and submitted as previously stated.

At the time of the final submission, the issues had been narrowed to but one question, that is: "Were the warehouse receipts issued by the Sears & Nichols Corporation, prior to the appointment of Stacey A. Mitchell, negotiable in character, with the result that the transfer thereof was a symbolic transferrence of the merchandise presented, to the constructive possession of the pledgees?" The question was further simplified by an agreement of the parties that the Cleveland Storage Company was authorized to do warehousing in Ohio and Illinois where the transactions took place; and further, that "field warehousing" if legitimately and legally carried out, creates a valid lien in favor of the holder of warehouse receipts.

With the foregoing general propositions in mind, it will be necessary to determine what actually transpired during the period within which the warehouse receipts were issued.

It appears from the record that the Sears & Nichols Corporation and its predecessor, the Sears & Nichols Canning Company, had been in financial difficulty for a number of years. In 1918, the Sears & Nichols Canning Company entered into an agreement whereby certain of its warehouses were leased to the Cleveland Storage Company. These leases were duly recorded in the counties where the respective warehouses were located. An agreement was then entered into by the Sears &

Nichols Canning Company and the Guardian Trust Company; it being provided that the latter company was to form a syndicate to purchase warehouse receipts issued by the Storage Company on merchandise packed and processed by the Canning Company and stored in the leased warehouses. Under this arrangement, when the Canning Company had an order for merchandise, it would contact the Guardian, which would in turn authorize the release of a certain amount of merchandise, and when it was sold, the holder of the warehouse receipts would be paid and the receipt canceled. By this method, the Sears & Nichols Canning Company obtained the necessary financial assistance to carry on its business.

This arrangement continued until 1922, when the Sears & Nichols Canning Company was brought into Court as the result of an action filed by the Whittaker-Glessner Company. At that time, Harry McCartney was, with the consent of all parties, appointed Receiver of the Canning Company. In order for the Receiver to conduct the business, it was necessary for him to utilize the same method of financing theretofore employed by the Canning Company, and with the consent and approval of the Court he continued to operate under that system.

This financing arrangement continued during the life of the Receivership involving the Sears & Nichols Canning Company. In 1927, the Sears & Nichols Corporation purchased the property of the Canning Company at Receiver's Sale. From that time until January 13, 1931, the business was conducted by the Sears & Nichols Corporation, using the same system of financing as that used by its predecessor and the Receiver from 1918 to the time of purchase. The same storage company was employed; the same banking syndicate purchased the warehouse receipts, and the same manner of securing financial assistance was utilized throughout.

When the Cleveland Storage Company assumed control of the various warehouses in accordance with their leases, large signs and placards were erected on the outside of the various buildings, which gave notice to all that the premises were in the exclusive possession and control of the Storage Company. A custodian was then placed in charge of the property. The salaries of the various custodians were paid by the Storage Company and later refunded by the Sears & Nichols Corporation. It was the custodian's duty to check all merchandise placed in the warehouse, and to replace all goods removed from the warehouse. He and the night watchman were the only ones who had keys for the premises, and the night watchman was to enter the premises only when his duties required him so to do. Signs inside the buildings stated that the premises were leased to the Cleveland Storage Company, and individual racks containing warehoused merchandise were also marked with a sign of the Storage Company.

In some instances, unpledged goods, including seed and other articles, were kept in the leased warehouses by the lessor. The Storage Company charged a flat rate of one-half of one percent of the value of pledged merchandise, as payment for its services. No other rent was paid. It is admitted that the definite need of the Sears & Nichols Corporation was "financing" and not "warehousing." The Cleveland Trust Company raises that point in its intervening petition and objects to the methods used by the Corporation and the Storage Company; contending that the plan of field warehousing was not legitimately and legally carried out, and that no valid lien in favor of the holders of warehouse receipts was created thereby.

■ Sections 8498 and 8499 of the General Code of Ohio, relating to this type of warehousing, were substantially complied with. The fact that the warehouses were the property of the Sears & Nichols Corporation, and that a flat rate, based upon the value of the merchandise pledged, was charged for the use of the warehouse, did not affect the possession of the Storage Company. The same applies to the custodian. It makes no difference who paid his salary, or that he might have been a former employee of the Sears & Nichols Corporation. Love v. Export Storage Co., 6 Cir., 1906, 143 F. 1; Equitable Trust Co. v. White Lumber Co., D.C.Idaho W.D., 1930, 41 F.2d 60; American Can Co. v. Erie Preserving Co., 2 Cir., 1910, 183 F. 96; also see Sexton v. Kessler & Co., 225 U. S. 90, 32 S.Ct. 657, 56 L.Ed. 995.

■ Considerable stress is placed on the fact that what the Sears & Nichols Corporation needed was financing, and not warehousing. It makes no difference what the primary motive may have been, so long as the essential requirements were complied with. Union Trust Co. v. Wilson, 1905, 198 U.S. 530, 25 S.Ct. 766, 49 L.Ed. 1154; Love v. Export Storage Co., supra.

The point is also raised, that pledged and free goods of the same variety were commingled and it is claimed that this fact shows that the Storage Company did not have possession of the pledged goods. Such a deduction would place a warped construction upon the facts shown. The goods were fungible both by virtue of the contract between the Sears & Nichols Corporation and the Storage Company, and as a matter of law. See § 8479, Ohio General Code; Standard Bank of Canada v. Lowman, D.C.W.D.Wash. N.D., 1924, 1 F.2d 935.

It followed that the Storage Company had possession of the goods; the warehouse receipts were valid as to form and substance, hence their transfer for value, created a valid lien in favor of the holders thereof. The relief asked by the Cleveland Trust Company in its intervening and supplemental petitions is denied.

In concluding this memorandum, mention should perhaps be made of the other question raised by the intervening petitions of the Cleveland Trust Company. The intervenor claims that two other banks had obtained a preference through a certain transaction wherein the Sears & Nichols Corporation transferred to each of said banks bonds of the Corporation in the face amount of $50,000 in payment of $40,000 in notes held by each of the two banks. This issue having been withdrawn by the intervenor, it is unnecessary to consider it further.